UNITED STATES of America, Plaintiff,

v.

ARTICLES OF FOOD . . . BUF-
FALO JERKY, etc., Defendant.

Civ. No. 77–0–349.

United States District Court,
D. Nebraska.

July 12, 1978.

Edward G. Warin, U. S. Atty., Robert F. Kokrda, Asst. U. S. Atty., Omaha, Neb., Stephen D. Terman, U.S. Food and Drug Admin., U. S. Dept. Health, Education and Welfare, Rockville, Md., for plaintiff.

Jeffrey A. Silver, Omaha, Neb., for defendant.

## MEMORANDUM OPINION

SCHATZ, District Judge.

The United States of America brought this action seeking to condemn certain food substances pursuant to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.* (hereafter referred to as "the Act"). The United States Marshal seized the substances identified in the complaint and the owner intervened to file a claim for return thereof. Each party filed a motion for summary judgment, the parties entered into a stipulation of facts (Filing No. 11) and the matter has been submitted for determination following a hearing.

At issue is a food substance made from the following ingredients: buffalo (bison) meat, textured vegetable protein, hydrolyzed vegetable protein, salt, spices, flavoring, sodium erythorbate, sodium nitrate, sodium nitrite, potassium sorbate, water and monosodium glutamate (stipulation at Par. 5). These ingredients are combined into dark brown patties of meat packaged in jars and labeled as set out at Paragraph 3 of the stipulation.

The government seeks to have these food substances condemned pursuant to 21 U.S.C. § 334 which provides in part:

(a)(1) Any article of food, drug, or cosmetic that is adulterated or misbranded when introduced into or while in interstate commerce or while held for sale (whether or not the first sale) after shipment in interstate commerce . . . shall be liable to be proceeded against while in interstate commerce, or at any time thereafter, on libel of information and condemned in any district court of the United States . . . . .

The parties have by their stipulation agreed that this court has jurisdiction over the instant action, that the food substances at issue are "articles of food" within the purview of 21 U.S.C. § 334, and in effect, that the food substances have been shipped in interstate commerce in their present condition. The questions presented for determination on summary judgment are whether the food substances are adulterated or misbranded within the meaning of the Act.

The government contends that the food items are adulterated within the meaning of 21 U.S.C. § 342(a)(2)(C) because they contain sodium nitrate and sodium nitrite; that the food items are adulterated within the meaning of 21 U.S.C. § 342(b)(2) because certain plant proteins have been substituted in part for the principal ingredient—bison meat; and that the food items are misbranded within the meaning of 21 U.S.C. § 343(i)(1). The government must prevail on at least one of these allegations to permit the condemnation.

The government contends that the food substance at issue is adulterated within the meaning of 21 U.S.C. § 342(a)(2)(C) which provides in relevant part:

A food shall be deemed to be adulterated—if it is, or it bears or contains, any food additive which is unsafe within the meaning of section 348 of this title . . . . .

"Food additive" as used in 21 U.S.C. § 342 is defined by 21 U.S.C. § 321(s) as follows:

The term "food additive" means any substance the intended use of which results or may reasonably be expected to result, directly or indirectly, in its becoming a component or otherwise affecting the characteristics of any food . . . if such substance is not generally recognized among experts qualified by scientific training and experience to evaluate its safety, as having been adequately shown through scientific procedures (or in the case of a substance used in food prior to January 1, 1958, through either scientific procedures or experience based on common use in food) to be safe under the conditions of its intended use; except that such term does not include—

\* \* \* \* \* \*

(4) any substance used in accordance with a sanction or approval granted prior to September 6, 1958, pursuant to this chapter, the Poultry Products Inspection Act (21 U.S.C. § 451 and the following) or the Meat Inspection Act of March 4, 1907, as amended and extended; . . . .

Title 21, United States Code, Section 348, provides in relevant part as follows:

(a) A food additive shall, with respect to any particular use or intended use of such additives, be deemed to be unsafe for the purposes of the application of clause (2)(C) of section 342(a) of this title, unless—

(1) it and its use or intended use conform to the terms of an exemption which is in effect pursuant to subsection (i) of this section; or

(2) there is in effect, and it and its use or intended use are in conformity with, a regulation issued under this section prescribing the conditions under which such additive may be safely used.

▇ In determining whether the food substance at issue is adulterated within the meaning of 21 U.S.C. § 342(a)(2)(C), the court must first determine whether the food substance contained a "food additive" within the meaning of 21 U.S.C. § 321(s). The definition of "food additive" consists of two elements: (a) the substance must become a component or otherwise affect the characteristics of the food and (b) the substance must lack general recognition among experts as being safe under the conditions of its intended use. The parties have stipulated that the food substance does contain as component parts the items sodium nitrate and sodium nitrite. The affidavits submitted by the government adequately support the conclusion that the use of sodium nitrate and sodium nitrite in conjunction with processing bison meat is not generally recognized among experts as being safe. While the claimant points to other uses of sodium nitrate and sodium nitrite which have been recognized as being safe, these examples are not comparable to the use in this case and so do not refute the government's showing or raise a factual

dispute as to whether the use of these products in bison meat is generally recognized as safe. Accordingly, the court finds that both elements of the definition of food additives have been met.

The claimant contends that these substances are approved for use under the Federal Meat Inspection Act, thus exempting them from the definition of food additives contained in 21 U.S.C. § 321(s) and precluding a determination that the product is adulterated within the meaning of 21 U.S.C. § 342(a)(2)(C). The government responds that this exception is inapplicable since the Meat Inspection Act applies only to meat food products which are defined by 21 U.S.C. § 601(j), as:

any product capable of use as human food which is made wholly or in part from any meat or other portion of the carcass of any cattle, sheep, swine, or goats . . . . This term as applied to food products of equines shall have a meaning comparable to that provided in this paragraph with respect to cattle, sheep, swine, and goats.

Contrary to claimant's assertion that only added substance and not the meat to which it is added must be subject to the Meat Inspection Act, the exemption contained in 21 U.S.C. § 321(s) provides that the use must be "in accordance with a sanction or approval granted pursuant to the Meat Inspection Act." The approval relied on by claimant is found at 9 C.F.R. § 318.7(c)(1), which provides in part:

. . . the following substances may be added to products: common salt, approved sugars . . . . sodium nitrate, sodium nitrite, potassium nitrate, potassium nitrite . . . . .

"Products" as used in this regulation are defined at 9 C.F.R. § 301.2(ww) as

Any carcass, meat, meat byproduct, or meat food product, capable of use as human food.

The terms "carcass," "meat," "meat byproduct," and "meat food product" all are defined at 9 C.F.R. § 301(a)(ss) through (vv) in terms of cattle, sheep, swine, goats and equines only. Thus, the issue is whether bison meat is within the purview of the

Meat Inspection Act when the term is not specifically included. Only if it is, will the use of sodium nitrate and sodium nitrite here be "in accordance with a sanction or approval granted pursuant to the Meat Inspection Act."

The parties have referred the court to no reported cases regarding the applicability of the Meat Inspection Act to buffalo meat. An early Missouri case, *State v. Crenshaw*, 22 Mo. 457 (1856), does stand for the proposition that buffalo, although domesticated, are not cattle within the meaning of a statute making it a crime to "wilfully and maliciously kill, wound or maim any cattle of another." As the policies underlying the Missouri criminal statutes and the Meat Inspection Act are quite different, we do not consider this case to be controlling. We, therefore, turn to the purpose and the language of the Federal Meat Inspection Act to resolve the issue.

■ The Meat Inspection Act is, by its very terms, designed to protect the health and welfare of consumers:

by assuring that meat and meat food products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged.

21 U.S.C. § 602.

As such the Meat Inspection Act is not intended to derrogate from any authority conferred by the Federal Food, Drug, and Cosmetic Act. *See* 21 U.S.C. § 679. Rather the Meat Inspection Act creates a separate area of concern—meat and meat byproducts for human consumption—over which the Department of Agriculture is given additional powers in the interest of protecting the public health and welfare.

■ The Meat Inspection Act specifically delineates the food products subject to its provisions, listing only foods derived from cattle, sheep, swine, goats and equines. Other food products are regulated under the Food, Drug and Cosmetic Act. In view of the safeguards of testing and regulation of ingredients set forth in the comprehensive regulations promulgated pursuant to the Food, Drug and Cosmetic Act, the court finds that food products derived from bison

meat will be adequately regulated for the protection of the public health and welfare under either the Food, Drug and Cosmetic Act or the Meat Inspection Act. In the absence of a congressional determination to include bison meat within the more limited coverage of the Meat Inspection Act, this court is unwilling to judicially extend the provisions of the Meat Inspection Act to do so. Accordingly, the court finds that the government correctly seeks to apply the provisions of the Food, Drug and Cosmetic Act to the food products at issue in this case. Therefore, the exception to the definition of food additives contained in 21 U.S.C. § 321(s) for substances used in accordance with a sanction or approval granted pursuant to the Meat Inspection Act is not applicable.

■ Having determined that sodium nitrate and sodium nitrite are food additives within the meaning of 21 U.S.C. § 342(a)(2)(C), the court now turns to the question of whether or not these additives are "unsafe within the meaning of Section 348 of this Title." Under the provisions of Section 348, a use is deemed to be unsafe for purposes of the Act unless an exemption is granted by the Secretary of Health, Education and Welfare upon proper application or unless the use is in accordance with a regulation prescribed by the Secretary. The language of the statute establishes a presumption that the food additives are unsafe unless one of the exceptions is established. The court has carefully examined the regulations promulgated by the Secretary but has been unable to identify any regulations which are applicable to the instant use of the food additives sodium nitrate and sodium nitrite. The claimant has failed to demonstrate either an exemption or investigative use or a regulation permitting such use. Accordingly, the court finds that the claimant's use of the food additives sodium nitrate and sodium nitrite are not approved by the Secretary and, therefore, are unsafe within the meaning of Section 348 of Title 21, United States Code.

Having determined that the food product at issue is a food which contains a food

211

additive which is unsafe within the meaning of Section 348, the court now finds that this food product shall be deemed to be adulterated within the meaning of 21 U.S.C. § 342(a)(2)(C) and subject to seizure pursuant to 21 U.S.C. § 334. As a sufficient basis exists pursuant to 21 U.S.C. § 342(a)(2)(C) for the condemnation of the food products seized by the United states Marshal, this court does not address the alternative allegations of adulteration and misbranding which have been argued by the government.

A separate decree will be entered this day denying claimant's motion for summary judgment, granting summary judgment for the plaintiff, and decreeing the food products at issue to be adulterated within the meaning of the Food, Drug and Cosmetic Act and subject to condemnation. Within twenty days following entry of this order, the parties shall submit to the court for its approval a proposed method for disposition of the condemned goods. The costs of this action shall be taxed against the claimant in accordance with 21 U.S.C. § 334(e).