# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 06-3157

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Rudolph George Stanko, | * | District of Nebraska. |
| | * | |
| Appellant. | * | |
| | * | |
| | * | |
| | * | |

_____

Submitted: January 11, 2007
Filed: June 20, 2007

_____

Before COLLOTON, BRIGHT, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Rudolph Stanko appeals his convictions for two counts of possessing firearms and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). On appeal, Stanko's primary argument is that the district court[1] erred in concluding that

---

[1]The Honorable Joseph Bataillon, Chief Judge, United States District Court for the District of Nebraska.

Stanko qualifies as a prohibited person under § 922(g)(1) because his 1984 conviction for violating the Federal Meat Inspection Act (FMIA) does not fall within the "business practices" exclusion of 18 U.S.C. § 921(a)(20)(A). We disagree and affirm the convictions.

## I.    BACKGROUND

In 1984, Cattle King Packing Co., Inc. and Stanko, an officer and shareholder of the corporation, were convicted after a jury trial of multiple counts of violating the FMIA, 21 U.S.C. § 601 et seq., and of conspiracy to violate the FMIA, 18 U.S.C. § 371. *United States v. Cattle King Packing Co.*, 793 F.2d 232 (10th Cir. 1986). In its opinion affirming the conviction, the Tenth Circuit Court of Appeals described the substantive counts against the defendants as: "(1) the fraudulent distribution of adulterated meat products; (2) the intentional circumvention of federal law requiring an inspection by a federal meat inspector of all shipments returned to Cattle King by dissatisfied purchasers; and (3) the fraudulent misbranding of meat shipments by stamping on the shipment a false production date." *Id.* at 235.

Ten years later, Stanko sought a declaratory judgment that he was not prohibited from possessing firearms under § 922(g)(1) because his conviction fell within the § 921(a)(20)(A) exclusion. After the United States District Court for the District of Montana denied relief on the merits, the Ninth Circuit Court of Appeals reversed with instructions to dismiss the case for lack of standing. *Stanko v. United States*, No. 95-35289, 1995 WL 499524, *1-2 (9th Cir. August 22, 1995) (unpublished table decision).

In 2005, a federal grand jury for the District of Nebraska returned an indictment charging Stanko with one count of possession of firearms by a prohibited person and one count of possession of ammunition by a prohibited person, both in violation of 18 U.S.C. § 922(g)(1), which provides:

> It shall be unlawful for any person—who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition . . . .

18 U.S.C. § 922(g)(1). Both counts cited Stanko's FMIA convictions to establish his prohibited person status.

After a pretrial hearing on Stanko's motion to dismiss the indictment, the district court concluded that Stanko's FMIA conviction did not fall within the § 921(a)(20)(A) exclusion, which states in relevant part:

> The term "crime punishable by imprisonment for a term exceeding one year" does not include—(A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices.

18 U.S.C. § 921(a)(20)(A). The district court reasoned that: (1) the exclusion was "directed towards illegal restraints of trade, monopolies, and anti-competitive forces in the marketplace," not towards fraud-related convictions such as Stanko's; (2) for the "similar offenses" language to apply, the offense must be similar in nature to antitrust, restraint of trade, or unfair trade practices, and must also relate to regulation of business practices; and (3) the FMIA conviction did not depend on its effect on consumers or on competition. The district court summarized by saying, "Although in some respect the allegations . . . could be considered unfair trade practices, the gravamen of these charges are issues of food and drug safety and fraud, not unfair trade practices." At trial and over Stanko's objections, the district court declined Stanko's request to instruct the jury on the exclusion and denied his motion for judgment of acquittal. The jury found Stanko guilty on both counts, and the district court sentenced him to 72 months in prison.

In addition to his substantive § 921(a)(20)(A) argument, Stanko contends on appeal that the indictment was fatally defective because it did not include the § 921(a)(20)(A) exclusion as an element of the charged offense and because the district court erred in treating his § 921(a)(20)(A) argument as a question of law for the court rather than one of fact for the jury.[2]

## II.    DISCUSSION

Stanko raised his challenges to the indictment and to the district court's refusal to submit the § 921(a)(20)(A) exclusion issue to the jury in his motions to dismiss the indictment and for judgment of acquittal. We review de novo the district court's denial of a motion to dismiss the indictment, *United States v. Postley*, 449 F.3d 831, 832 (8th Cir. 2006), and we also apply de novo review to the denial of a motion for judgment of acquittal, *United States v. Cannon*, 475 F.3d 1013, 1020 (8th Cir. 2007).

An indictment "is legally sufficient on its face if it contains all of the elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Hernandez*, 299 F.3d 984, 992 (8th Cir. 2002). The Government must prove three essential elements for a § 922(g)(1) conviction: (1) the defendant previously was convicted of a crime punishable by a term of imprisonment exceeding one year; (2) he knowingly possessed a firearm; and (3) the firearm traveled in or affected interstate commerce. *United States v. Maxwell*, 363 F.3d 815, 818 (8th Cir. 2004). We have not

---

[2]On appeal, in addition to his counseled briefs, Stanko has filed two pro se "Petition[s] for Great Writ of Habeas Corpus" in which he advances additional arguments as to why his convictions should be overturned. We construe these filings as supplemental pro se briefs and decline to address them. *See United States v. Peck*, 161 F.3d 1171, 1174 n.2 (8th Cir. 1998) ("It is not our practice to consider pro se briefs filed by parties represented by counsel . . . .") (internal citation omitted).

included the § 921(a)(20)(A) exclusion as an element of a § 922(g)(1) offense. In addition, several circuits have held that the exclusions of § 920(a)(20) are legal definitions rather than elements of a § 922(g)(1) violation. *E.g., United States v. Bartelho*, 71 F.3d 436, 439-40 (1st Cir. 1995) (holding that the § 921(a)(20) exclusion is a legal definition, not an element, and noting that the holding follows the approach taken by other circuits); *United States v. Jackson*, 57 F.3d 1012, 1015-17 (11th Cir. 1995); (rejecting the defendant's argument that § 921(a)(20) adds a new element to a § 922(g)(1) offense; holding that the government had no obligation to prove that the exclusion was inapplicable where the defendant did not proffer evidence that the prior conviction fell within the exception); *United States v. Flower*, 29 F.3d 530, 534 (10th Cir. 1994) (holding that § 921(a)(20) is a legal definition that defines "conviction for a term exceeding one year"). We agree and hold that the indictment was not defective because the § 921(a)(20)(A) exclusion is not an element of a § 922(g)(1) offense. The indictment in this case contained each element of the offense, fairly informed Stanko of the charges, and alleged sufficient information to allow Stanko to plead a conviction or acquittal as a bar to a subsequent prosecution. Therefore, the district court did not err in refusing to dismiss the indictment.

Likewise, we conclude that whether Stanko's predicate FMIA convictions qualified under the § 921(a)(20)(A) exclusion was a question of law for the court rather than one of fact for the jury. The definitional nature of the § 921(a)(20) exclusions places the responsibility on the court to determine as a matter of law whether the prior conviction qualifies as a "crime punishable by imprisonment for a term exceeding one year" under § 922(g)(1). *Bartelho*, 71 F.3d at 440 (considering the § 921(a)(20) exclusion of a conviction which has been expunged or set aside, or for which a person has been pardoned or has had civil rights restored); *see also United States v. Hayes*, No. 06-4087, 2007 WL 1112797, at \*1 (4th Cir. Apr. 16, 2007) (noting that questions regarding the definition of a predicate offense set forth in § 921(a)(33)(A) are questions of law); *United States v. Bethurum*, 343 F.3d 712, 716-17 (5th Cir. 2003) (holding that for purposes of § 922(g)(9), the trial judge rather than

the jury should determine whether "a particular conviction is admissible as relevant evidence of a misdemeanor crime of domestic violence" as defined in § 921(a)(33); noting that numerous courts have treated questions regarding the definitions in § 921(a) as purely legal questions); *United States v. Akins*, 276 F.3d 1141, 1146 (9th Cir. 2002) ("Because § 921(a)(33)(B)(i)(I) is a legal definition, its application presents a question of law to be decided by the trial judge."); *United States v. Daugherty*, 264 F.3d 513, 514 (5th Cir. 2001) ("The question whether a felony conviction may serve as a predicate offense for a prosecution for being a felon in possession of a firearm pursuant to § 922(g)(1) is purely a legal one.") (internal quotation omitted). We agree with these circuits and hold that whether a conviction falls within the exclusions defined in § 921(a)(20)(A) is a question of law for the court.[3] *Cf. United States v. Mincks*, 409 F.3d 898, 901 (8th Cir. 2005) (noting that whether a prior conviction is a violent felony under the Armed Career Criminal Act "is distinctly a question of law for the court, not a jury"), *cert. denied*, ---U.S.---, 126 S. Ct. 1345 (2006). Therefore, the district court did not err in rejecting Stanko's argument that the issue should have been submitted to the jury.

We now turn to the substantive question of whether the district court correctly concluded that Stanko's FMIA convictions do not fall within the § 921(a)(20)(A) exclusion, a question of first impression in this circuit. This court "appl[ies] de novo review to . . . questions of federal law involving statutory interpretation." *United*

---

[3]We also necessarily conclude that Stanko's Sixth Amendment right to a trial by jury was not violated by the district court's refusal to instruct the jury on the § 921(a)(20)(A) exclusion. Stanko's reliance on *United States v. Gaudin*, 515 U.S. 506 (1995), is misplaced. *Gaudin* held that a trial judge must submit instructions to the jury on every element of the crime charged, which included the element of the "materiality" of Gaudin's false statements on Department of Housing and Urban Development loan documents. *Id.* at 511, 522-23. By contrast here, because the § 921(a)(20)(A) exclusion is not an element of a § 922(g)(1) offense, *Gaudin* does not require the jury to be instructed on the exclusion.

*States v. Bach*, 400 F.3d 622, 627 (8th Cir.) (internal citation omitted), *cert. denied*, ---U.S.---, 126 S. Ct. 243 (2005). We begin our discussion by considering Stanko's argument, based upon his reading of the § 921(a)(20)(A) clause "or other similar offenses relating to the regulation of business practices" ("the business practices clause"), that Congress intended to exclude convictions for all business-related offenses from qualifying a defendant as a prohibited person under § 922(g)(1). We then consider whether, even if we reject Stanko's interpretation of the business practices clause, his FMIA convictions fall within the specifically enumerated offenses.

In examining the meaning of a statute, our inquiry begins with the statute's plain language. *United States v. Cacioppo*, 460 F.3d 1012, 1016 (8th Cir. 2006). "The Court will avoid an interpretation of a statute that renders some words altogether redundant," *United States v. Alaska*, 521 U.S. 1, 59 (1997) (internal quotation omitted), and should "avoid a statutory construction that would render another part of the same statute superfluous," *United States v. Gomez-Hernandez*, 300 F.3d 974, 979 (8th Cir. 2002). Stanko argues that the enumerated offenses excluded by § 921(a)(20)(A)—antitrust violations, unfair trade practices, and restraints of trade—encompass a vast array of business-related offenses and that the business practices clause serves simply to emphasize that Congress viewed the three enumerated offenses as similar, namely as related to the regulation of business practices broadly speaking. As a result, Stanko contends, any offense related to the regulation of business practices falls within the exclusion.

We do not agree with Stanko's broad interpretation of the business practices clause. First, "[q]ualifying words or clauses refer to the next preceding antecedent except when evident sense and meaning require a different construction." *United States v. Friedrich,* 402 F.3d 842, 845 (8th Cir.), *cert. denied*, ---U.S.---, 126 S. Ct. 495 (2005). We do not find any evident sense or meaning in the statute that would require us to avoid applying this grammatical rule. Thus, the qualifying clause

-7-

"relating to the regulation of business practices" refers only to the preceding antecedent "other similar offenses" rather than functioning, as Stanko would have it, as descriptive of the commonalities between each of the enumerated offenses and as an indication of a congressional intent to exclude any business-related offense.[4] Second, Congress used the comparative term "similar" to modify "offenses," rather than saying "any other offenses" or simply "other offenses." The term "similar" indicates an intent to limit the business practices clause's reach to offenses which are "comparable" or "nearly corresponding" to the enumerated offenses. *See Webster's Third New International Dictionary* 2120 (2002) (defining "similar" as "having characteristics in common : very much alike : comparable"); *see also United States v. Lindsey*, 782 F.2d 116, 117-18 (8th Cir. 1986) (per curiam) (discussing whether crimes were of a similar character and defining "similar" as [n]early corresponding; resembling in many respects; somewhat alike; having a general likeness") (internal quotations omitted). Thus, we believe the general phrase "or other similar offenses relating to the regulation of business practices" refers back for its meaning to the three types of offenses Congress specifically enumerated—antitrust violations, unfair trade practices, and restraints of trade. Stanko's broad reading of the phrase would not only render the use of "similar" nonsensical, it would also render the enumerated terms superfluous because each enumerated offense is by definition an offense related to the regulation of business practices. Therefore, we conclude that the plain meaning of the

---

[4]Until a 1986 amendment to the statute, § 921(a)(20)(A) read "or similar offenses relating to the regulation of business practices *as the Secretary may by regulation designate*." 18 U.S.C. 921(a)(20)(A) (1968), *amended by* Pub. L. No. 99-308 (1986) (emphasis added). Our research has not revealed any offense so designated by the Secretary under this prior version, nor any indication of Congress's rationale for deleting that language.

statute indicates Congress's intent to limit the offenses that fall within the § 921(a)(20)(A) exclusion to those pertaining to antitrust violations, unfair trade practices, restraints of trade, or offenses similar to them.[5]

Having concluded that the § 921(a)(20)(A) exclusion does not extend to all business-related offenses, we must now determine whether Stanko's FMIA offenses pertain to antitrust violations, unfair trade practices, restraints of trade, or "other

---

[5]Even if we were to find ambiguity in the language of § 921(a)(20)(A), as suggested by Stanko, the application of the established maxim of statutory construction *ejusdem generis* would also support our interpretation. *Ejusdem generis* provides that "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Circuit City Stores, Inc., v. Adams*, 532 U.S. 105, 114-15 (2001) (quotation omitted). In considering a phrase in the Federal Arbitration Act that excluded from the Act's coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," *id.* at 109, the Court concluded that the residual clause "should itself be controlled and defined by reference to the enumerated categories of workers which are recited just before it," *id.* at 115. The same principle would apply here. Congress chose to enumerate three types of offenses that qualify for the § 921(a)(20)(A) exclusion and to add the residual clause "or other similar offenses relating to the regulation of business practices." Were we to assume that the business practices clause is ambiguous, we would still conclude under the doctrine of *ejusdem generis* that the clause must be "controlled and defined" by reference to the enumerated offenses. *See id.*

In addition, Stanko's argument that any ambiguity in the statute requires resolution in his favor under the rule of lenity misinterprets the reach of that rule. *See Bernitt v. Martinez*, 432 F.3d 868, 869 (8th Cir. 2005) (per curiam) ("We do not resort to the rule of lenity where, as here, we can otherwise resolve the ambiguity of the statute."). We also reject Stanko's argument that the exclusion is unconstitutionally vague. *See United States v. Bamberg*, 478 F.3d 934, 937 (8th Cir. 2007) ("The statute, first, must provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement.").

similar offenses" so as to fall within the exclusion. Although Stanko briefly mentions antitrust violations and restraint of trade in his brief, he sets forth no substantive arguments that his FMIA convictions pertain to either. We therefore limit our discussion to whether they pertain to unfair-trade-practices offenses or are similar to antitrust violations, unfair trade practices, or restraints of trade collectively. *See Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004) (noting that claims not meaningfully argued in the opening brief are waived).

Only three courts have analyzed whether an offense qualifies under the § 921(a)(20)(A) exclusion. Each of these courts has focused on whether the statute of conviction constitutes the type of offense enumerated in § 921(a)(20)(A), as evidenced by the primary purpose of the criminal statute and the elements the Government must prove for conviction under it. In *Dreher v. United States*, after recounting the elements of the statute of conviction, the court held that convictions for mail fraud and conspiracy to commit mail fraud did not qualify under the exclusion "[b]ecause violations of §§ 371 & 1341 in no way depend on whether they have an effect upon competition." 115 F.3d 330, 332-33 (5th Cir. 1997). In *United States v. Meldish*, the court noted that none of the elements of the offense of bringing a wristwatch into the United States by means of a false customs declaration included effects on competition or consumers and that "[s]ection 542 does not concern itself with matters" related to unfair trade practices. 722 F.2d 26, 27-28 (2d Cir. 1983). Finally, in *United States v. McLemore*, the court held that a conviction for rolling back odometers, in violation of 15 U.S.C. §§ 1984 and 1990c(a), did qualify as an unfair trade practice because the statutes "are meant to punish an 'unfair trade practice' within the meaning of 18 U.S.C. § 921(a)(20)" and explicitly referred to the need to protect consumers from unfair trade practices. 792 F. Supp. 96, 98 (S. D. Ala. 1992).

Significantly, the focus on the purpose and elements of the statute of conviction in these cases endures notwithstanding the possibility that the defendant's criminal conduct may also have incidentally hampered competition or had negative economic

effects on consumers. For example, the *Dreher* court specifically rejected the argument that because Dreher's activities had destroyed the competitive billing process and injured his competitors, his offense should qualify under the § 921(a)(20)(A) exclusion. *Dreher*, 115 F.3d at 332. Instead, the court concluded that the plain meaning of "offenses" referred solely to the charged violation of law and not to the possible incidental effects of the defendant's activities. *Id.* We agree that the term "offenses" in the context of § 921(a)(20)(A) refers to the charged violation of law. Thus, the primary purpose of the statute of conviction and the elements that the Government must prove for conviction under it, rather than the possible incidental effects of the defendant's actions, are the proper focus of the § 921(a)(20)(A) inquiry.

We also agree with the *Dreher* and *Meldish* courts that implicit in the term "unfair trade practices" is the requirement of an adverse economic effect on competition or consumers. *See Dreher*, 115 F.3d at 332-33; *Meldish*, 722 F.2d at 28. The standard dictionary definition of the term supports the requirement of adverse economic effects. Although unfair trade can include generally any "inequitable business practice," it especially applies to "the act or an instance of a competitor's repeating of words in a way that conveys a misrepresentation that materially injures the person who first used the words, by appropriating credit of some kind earned by the first user." *Black's Law Dictionary*, 1564 (8th ed. 2004); *see also id.* at 1563 (defining "unfair competition" generally as "dishonest or fraudulent rivalry in trade and commerce" but especially "the practice of endeavoring to pass off one's own goods or products in the market for those of another by means of imitating or counterfeiting the name, brand, size, shape, or other distinctive characteristic of the article or its packaging"). Moreover, under the doctrine of *noscitur a sociis*, which instructs that a word is "known by the company it keeps," *Gustafson v. Alloyd Co.,* 513 U.S. 561, 575 (1995), we "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress," *id.* (internal quotation omitted). Thus, while the term "unfair trade practices" *can* apply broadly to any inequitable business practice, the meaning it

carries here must be determined by reference to the other two enumerated terms—antitrust violations and restraints of trade—both of which clearly involve negative economic effects on consumers or competition. *See Black's Law Dictionary*, 104 (8th ed. 2004) (defining "antitrust law" as "[t]he body of law designed to protect trade and commerce from restraints, monopolies, price-fixing, and price discrimination."); *id.* at 1340 (defining "restraint of trade" as "1. A limitation on business dealings or professional or gainful occupations. 2. *Antitrust.* An agreement between or combination of businesses intended to eliminate competition, create a monopoly, artificially raise prices, or otherwise adversely affect the free market.") This choice of enumerated terms suggests that Congress intended to exclude from § 922(g)(1)'s prohibition those felons convicted under criminal statutes addressing only economic harm to competition or consumers, but not to exclude those felons convicted under criminal statutes designed primarily to address other societal concerns.

Stanko argues that violating the FMIA is an unfair trade practice as a matter of clearly established law because one of the FMIA's main purposes is to protect the market from unfair competition and because the activities underlying his FMIA conviction harmed competition. He also argues that mislabeling products and committing business fraud constitute unfair trade practices by definition and that the FMIA must be an unfair-trade-practices law because it has preempted all state unfair-trade-practices laws.

We disagree with Stanko's characterization of the primary purpose of the FMIA as well as his reliance on the potential incidental adverse effects on competition and consumers resulting from his FMIA violations. It is true that the statement of congressional findings at 21 U.S.C. § 602 includes concerns about the effects of unwholesome meat on competition and markets. These concerns, however, are subordinate to the FMIA's primary public-health purpose of protecting consumers from unsafe meat: "It is essential in the public interest that the health and welfare of

-12-

consumers be protected by assuring that meat and meat food products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged." 21 U.S.C. § 602. Indeed, cases discussing the FMIA uniformly describe the statute as concerned primarily with protecting public health. *See, e.g., Nat'l Pork Producers Council v. Bergland*, 631 F.2d 1353, 1361 (8th Cir. 1980) (noting that Congress expressly charged the USDA with assuring that meat distributed to consumers is wholesome, not adulterated, and properly marked, labeled, and packaged); *United States v. Mullens*, 583 F.2d 134, 139 (5th Cir. 1978) ("The purpose of the Meat Inspection Act of 1907, as amended . . . is to ensure a high level of cleanliness and safety in meat products."); *Pac. Trading Co. v. Wilson & Co.*, 547 F.2d 367, 370 (7th Cir. 1976) ("The Federal Meat Inspection Act has as its stated purpose, the enforcement of standards of sanitation throughout meatpacking plants."); *United States v. Articles of Food . . . Buffalo Jerky*, 456 F. Supp. 207, 210 (D. Neb. 1978) ("The Meat Inspection Act is, by its very terms, designed to protect the health and welfare of consumers: 'by assuring that meat and meat food products distributed to them are wholesome, not adulterated, and properly marked, labeled and packaged'.") (citing 21 U.S.C. § 602); *Fed'n. of Homemakers v. Hardin*, 328 F. Supp. 181, 184 (D.D.C. 1971) ("The primary purpose of the Wholesome Meat Act is to benefit the consumer and to enable him to have a correct understanding of and confidence in meat products purchased. Prohibitions against mislabeling are an integral part of this purpose."). Thus, despite the fact that the FMIA statutory scheme necessarily involves regulating business and may have the effect of protecting consumers and competition from economic harm, we conclude that the primary purpose of the FMIA is to protect public health from the effects of unwholesome meat.

Even more significantly, none of the provisions of the FMIA require the Government to prove an effect on competition or consumers as an element of the offense. More specifically, none of the provisions under which Stanko was convicted required the Government to prove such effects. *See* 21 U.S.C. §§ 605 (requiring inspection of meat products), 610 (prohibiting adulteration or misbranding of meat

products), and 611 (prohibiting mislabeling). Instead, Stanko's mislabeling, misbranding, adulteration of meat, and deliberate avoidance of inspection alone ran afoul of the FMIA, independent of the incidental effects those actions may have had on competition or consumers.

An instructive contrast to the FMIA is the Packers and Stockyards Act (PSA), 7 U.S.C. § 192. Meatpackers run afoul of the PSA for such offenses as engaging in unfair, unjustly discriminatory or deceptive practices; apportioning supplies if such apportionment has the effect of restraining commerce or of creating a monopoly; and engaging in any course of business for the purpose or with the effect of manipulating or controlling prices. 7 U.S.C. § 192 (a), (c), (e). In comparing the PSA with the FMIA, the Sixth Circuit Court of Appeals has noted that "the statutes have quite different purposes. The FMIA is a public health statute, aimed at 'preventing the use in commerce of meat and meat food products which are adulterated.'" *D&W Food Centers, Inc. v. Block*, 786 F.2d 751, 755 (6th Cir. 1986) (quoting 21 U.S.C. § 603(a)). By contrast, "the Stockyards Act is a fair trade practices law, and the chief evil at which it was aimed was the monopoly of the packers, enabling them unduly and arbitrarily to injure consumers and suppliers by controlling pricing." *Id.* (internal quotation omitted). The PSA's explicit prohibition of activities commercially and economically harmful to competition or consumers stands in marked contrast to the FMIA's public-health related prohibitions, none of which requires proof of economic effects on competition or consumers. Therefore, despite the potential for Stanko's criminal activities to have such incidental effects on competition and consumers, we find that none of the FMIA provisions under which Stanko was convicted requires the Government to prove an effect on competition or consumers as an element of the offense.

Having determined that the primary purpose of the FMIA is to protect public health and that the elements of Stanko's FMIA offenses of conviction do not involve an economic effect on competition or consumers, we find Stanko's additional

-14-

arguments unavailing as well. That Stanko's acts involved fraud and mislabeling does not transform an FMIA offense into an unfair-trade-practices offense or an offense similar to the enumerated offenses, notwithstanding the fact that fraudulent conduct and mislabeling may be present in many unfair-trade-practices statutes.[6] In addition, Stanko's argument that the FMIA has preempted all state unfair-trade-practices laws and, therefore, must be one itself is meritless. In assessing whether a federal law has preempted state law, courts "start with the assumption that the historic police powers of the states were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quotation omitted). Congressional enactments may "override state laws with which they conflict" and where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525-26 (1977). While it is true that the FMIA prohibits states from imposing "[m]arking, labeling, packaging, or ingredient requirements in addition to, or different than, those" mandated under the FMIA, 21 U.S.C. § 678, nothing in the text of the FMIA indicates an intent to preempt state unfair-trade-practices laws in general, nor have we found any cases supporting Stanko's claim that it does so. In *Rath Packing*, the Court held that where FMIA labeling requirements conflicted with California labeling requirements with respect to bacon, the FMIA requirements preempted California's. *Id.* at 532. The Court based its conclusion on § 678's prohibition of "the imposition of '[m]arking, labeling, packaging, or ingredient requirements in addition to, or different than, those made under' the Act." *Id.* at 530 (quoting § 678); s*ee also Animal Legal Defense Fund v. Provimi Veal*, 626

---

[6]An "intent to defraud" is not required for conviction under the FMIA. When an intent to defraud is present, as in Stanko's convictions, the potential criminal punishment for the violation increases. *See* 21 U.S.C. § 676(a) (any violation of any provision of the FMIA subjects a person to imprisonment "for not more than one year, or a fine of not more than $1,000, or both such imprisonment and fine; but if such violation involves intent to defraud . . . such person . . . shall be subject to imprisonment for not more than three years or a fine of not more than $10,000, or both . . . .").

F. Supp. 278, 286 (D. Mass. 1986) ("[M]eat ingredient standards, labeling and packaging have been pre-empted by the FMIA, and states cannot impose different or additional affirmative requirements on meat and meat food products.") (citation omitted). *Rath Packing* does not, however, stand for the proposition that the FMIA has preempted state unfair-trade-practices laws in addition to state meat-product ingredient, labeling, and packaging laws.

Therefore we conclude, based on the primary purpose of the FMIA and the requirements for conviction under it, that Stanko's FMIA offenses do not pertain to "antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices" under § 921(a)(20)(A).

## III. CONCLUSION

Accordingly, we hold that Stanko's FMIA convictions do not fall within § 921(a)(20)(A) exclusion and, as a result, that he was a prohibited person under § 922(g)(1). We therefore affirm his convictions.

BRIGHT, Circuit Judge, dissenting.

It is ordinarily unlawful for anyone "who has been convicted in any court of, a crime publishable by imprisonment for a term exceeding one year" to possess a firearm or ammunition which has traveled in interstate commerce, 18 U.S.C. § 922(g)(1), but the congressional enactment before us exempts certain individuals who commit business crimes, 18 U.S.C. § 921(a)(20)(A). The exemption from the bar to gun ownership applies to persons convicted of "antitrust violations, unfair trade practices, restraints of trade, or other <u>similar</u> offenses relating to the regulation of business practices[.]" 18 U.S.C. § 921(a)(20)(A) (emphasis added). Thus a person who has committed a felony may still own a gun if that person's felony relates to certain business crimes.

-16-

The majority speculates that Congress, on passing this legislation, excluded only a limited subset of business crimes, and that the Stanko's Federal Meat Inspection Act ("FMIA") offenses, 21 U.S.C. § 601 et seq., are not "unfair trade practices" crimes or "similar offenses" within the scope of the exemption. The Gun Control Act of 1968 originally required the Secretary to designate the "similar offenses" that were within the scope of the exemption, 18 U.S.C. § 921(a)(20) (Supp. V. 1969). The 1986 Firearms Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449 (1986), however, eliminated the Secretary's role and left the courts to determine which business offenses are similar to antitrust violations, unfair trade practices, and restraints of trade.

A court's task of interpreting the exemption is complicated by the lack of Congressional commentary on § 921(a)(20)(A). Most recently, when Congress amended the Gun Control Act by enacting the Firearms Owners' Protection Act, the bill's sponsor, Senator James McClure, explained:

> [T]his bill [the Firearms Owners' Protection Act] has been painstakingly crafted to focus law enforcement on the kinds of Federal firearms law violations most likely to contribute to violent firearms crime . . . . We must compel the enforcing agency to stop harassing honest people and to direct their efforts at the violent criminals who give all gun owners a bad name.

131 Cong. Rec. S23 (daily ed. Jan 3, 1985) (statement of Sen. McClure).

The statement seems to limit the prohibition on gun ownership only to "those who have demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.'" Scarborough v. United States, 431 U.S. 563, 572 (1977) (quoting 114 Cong. Rec. 14773 (1968)) (explaining the intent of the prohibitions against felons possessing firearms contained in the Omnibus Crime Control Act of 1968).

-17-

Congress, by enacting § 921(a)(20)(A), has deemed criminals who commit a subset of business crimes outside the definition of those who "may not be trusted," but it has done little to outline the contours of that subset. The parties here have not suggested any legislative history explaining the original meaning of the § 921(a)(20)(A) exemption or the choice to remove the Secretary's role in defining its scope, and like the majority I have found none.

The result of Congress's abdication is a criminal statute that is impermissibly vague. See Kolender v. Lawson, 461 U.S. 352, 357 (1983); United States v. Bass, 404 U.S. 336, 348 (1971); see also James v. United States, 127 S. Ct. 1586, 1601-03 (2007) (Scalia, J., dissenting). The definitions contained in § 921, and those pertaining to the regulation of gun ownership generally, are loadstones for due process challenges predicated on vagueness. See, e.g., United States v. Smith, 171 F.3d 617, 622 (8th Cir. 1999); United States v. Decker, 446 F.2d 164, 166 (8th Cir. 1971); United States v. Nieves-Castano, 480 F.3d 597, 603 (1st Cir. 2007) (collecting cases); White v. Dep't of Justice, 328 F.3d 1361, 1368 (Fed. Cir. 2003). The challenges have thus far proved unsuccessful.

But here the vagueness of statute goes beyond, for example, the uncertainty inherent in defining a "violent felony" for purposes of 18 U.S.C. § 924(e)(2)(B) (codifying in part the Armed Career Criminal Act), see James v. United States, 127 S.Ct. 1586, 1598 n.6 (2007), or a "misdemeanor crime of domestic violence" for purposes of 18 U.S.C. § 922(g)(9), see United States v. Pfeifer, 371 F.3d 430, 437 (8th Cir. 2004). I recognize that the enumerated crimes of § 921(a)(20)(A) likely do not lack constitutionally required specificity; they are no more vague than "violent felony" or "misdemeanor crime of domestic violence." And, the majority plausibly distinguishes Stanko's FMIA violations from the category of excluded "unfair trade practices" crimes because the FMIA is a public health statute in addition to an economic regulation. However, § 921(a)(20)(A)'s exemption of similar offenses clause lacks the same specificity.

The "similar offenses" clause of § 921(a)(20)(A) is crucial to this appeal. If, as the majority notes, this court is to obey a fundamental tenet of statutory interpretation, the clause must contemplate some crimes or be relegated to "mere surplusage." See Potter v. United States, 155 U.S. 438, 446 (1894). But the clause is, at the moment, hollow: the Secretary seemingly failed to designate any crimes prior to 1986 and I am not familiar with any precedent placing a crime within its scope. Cf. United States v. McLemore, 792 F. Supp. 96, 98 (S.D. Ala. 1992) (crime of odometer tampering, 15 U.S.C. §§ 1984, 1990c(a), an "unfair trade practice" crime within the scope of § 921(a)(20)(A)). Courts have only, like the majority in this case, provided some guidance regarding crimes that are outside the clause.[7] See, e.g., United States v. Oldroyd, No. 97-30354, 1998 WL 476395 (9th Cir. July 28, 1998) (unpublished opinion) (harboring illegal alien not offense relating to regulation of business practices); Dreher v. United States, 115 F.3d 330, 332 (5th Cir. 1997) (mail fraud and wire fraud not offenses excluded by § 921(a)(20)(A)); United States v. Kruckel, No. 92-611, 1993 WL 765648 (D.N.J. Aug. 13, 1993) (crime of filing false tax returns not within similar offenses clause). It may be that the district court in Dreher was correct when it described the similar offenses clause to include "violations of laws which likewise seek to enhance competition and prevent injuries to consumers and businesses." Dreher v. United States, 943 F. Supp. 680, 683 (W.D. La. 1996). But, that judicially constructed definition may also be too restrictive to the extent that it excludes statutes—like the Federal Meat Inspection Act—that are primarily, or

---

[7]The majority includes United States v. Meldish, 722 F.2d 26 (2d Cir. 1983) in its catalogue of cases that have examined § 921(a)(20)(A)'s exemption. Meldish held that the crime of importation by means of a false customs declaration, 18 U.S.C. § 542, is not an unfair trade practices crime, and that determination provides some guidance. But, the case is unhelpful as an example of crimes not included in the similar offenses clause because Meldish analyzed the § 921(a)(20)(A) exemptions prior to 1986, when the Secretary was the gatekeeper of the similar offenses clause. It is at least possible that a court, examining the crime today, could conclude that § 542 offenses do not prohibit an unfair trade practice but are within the judicially constructed set of similar offenses.

partially, designed to prevent evils beyond economic harm. Courts have yet to discover—or be presented with—an instance where the government sought to use such a purely economic crime, outside the three enumerated categories, to justify an 18 U.S.C. § 922 prosecution.

The complete absence of Congressional guidance and scarcity of federal precedent leaves the meaning of the similar offenses clause unconstitutionally vague, and thus the class of individuals who may possess a firearm without the threat of prosecution is in part undefined. All persons, including those like Stanko, enjoy the right to live under a system of laws in which "a penal statute define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender, 461 U.S. at 357. That right should not be jeopardized by an approach to statute drafting and interpretation that forces at least one individual (for each arguably economic crime) to learn, ex post, whether he has committed a crime by possessing a firearm.[8] See James, 127 S.Ct. at 1609-10 (Scalia, J., dissenting).

The similar offenses clause of § 921(a)(20)(A) could be read as the majority determines, or otherwise, as contended by Stanko. Either is a plausible interpretation of the text. Stanko should not be convicted under a statute that is so uncertain as to its meaning, and therefore I respectfully dissent.

––––––––––––––––––––––––––––––

––––––––––––––––––––––––

[8]Stanko attempted but failed to get a final adjudication of his rights in a non-criminal setting. He sought a declaratory judgment that his FMIA offense was within the scope of § 921(a)(20), which a district court denied on the merits, but the Ninth Circuit vacated the court's order because Stanko had not, at that time, suffered a harm and thus lacked standing. See Stanko v. United States, No. 95-35289, 1995 WL 499524 (9th Cir. Aug. 22, 1995) (unpublished opinion). The Ninth Circuit's decision highlights the concern I express in this dissent: our system of laws should not accept a statute so vague that an individual must suffer the harm of a § 922(g) conviction before learning from the courts whether his prior conviction falls within the scope of § 921(a)(20)'s exemptions.