In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1192

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEVIN R. SCHULTZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:08-cr-00004-RLM-1—**Robert L. Miller, Jr.,** *Chief Judge.*

ARGUED SEPTEMBER 11, 2009—DECIDED NOVEMBER 5, 2009

Before BAUER, ROVNER and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Kevin Schultz was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On appeal, he challenges his conviction. We affirm.

## I. BACKGROUND

On February 25, 2005, Schultz pleaded guilty to one count of trafficking in counterfeit telecommunications instruments, in violation of 18 U.S.C. § 1029(a)(7), an

offense punishable by fine and/or imprisonment not to exceed ten years. Schultz was sentenced to two years probation, with the first six months to be served on home detention.

On December 7, 2007, pursuant to a search warrant, federal agents searched Schultz's residence and found a 12-gauge Remington shotgun and ammunition in the attached garage. Thereafter, a two-count indictment was filed against him: Count One for violating 18 U.S.C. § 922(g), which makes it unlawful for one convicted of a crime punishable of a term exceeding one year to possess a firearm ("felon-in-possession"); and Count Two for making a false statement regarding his ownership of the shotgun, in violation of 18 U.S.C. § 1001.

Schultz filed a motion to dismiss the indictment and a motion to suppress both the shotgun and his statements; the district court denied both motions. Thereafter, a bench trial was held on stipulated facts for Count One; and the government moved to dismiss Count Two. The district court found Schultz guilty and sentenced him to eighteen months of imprisonment, to be followed by three years of supervised release.

## II. DISCUSSION

On appeal, Schultz argues that the felon-in-possession indictment was insufficient because his prior conviction does not meet the definition of a "crime punishable by imprisonment for a term exceeding one year" under 18 U.S.C. § 921(a)(20)(A), or in the alternative, that the

charge should be dismissed because § 921(a)(20)(A) is impermissibly vague. Schultz further maintains that he was entitled to a *Franks* hearing to test the validity of the search warrant affidavit. Finally, Schultz asserts that the statements he made when his home was searched should have been suppressed.

## A.  The 18 U.S.C. § 1029(a)(7) Conviction

### 1.  Schultz's Previous Conviction

Schultz argues that his prior felony conviction does not meet the definition of a "crime punishable by imprisonment for a term exceeding one year" because Congress carved out an exception under 18 U.S.C. § 921(a)(20)(A), to exclude "any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices." Schultz contends that his 2005 conviction is excluded under "similar offenses relating to the regulation of business practices" because he was convicted of knowingly trafficking in a telecommunications instrument.

It does not appear that this Circuit has ever addressed whether a § 1029(a)(7) conviction is exempt under § 921(a)(20(A). However, other circuits that have discussed § 921(a)(20)(A) have held that not all offenses related to the regulation of business practices fall within the exclusion; the plain meaning of the statute indicates Congress' intent to exclude only those offenses that pertain to antitrust violations, unfair trade practices, restraints

of trade, or similar offenses. *United States v. Stanko*, 491 F.3d 408, 413-14 (8th Cir. 2007). For example, *Stanko* held that it did not apply to a Federal Meat Inspection Act ("FMIA") conviction, 491 F.3d at 416; *Meldish* ruled it did not apply to a conviction for importing merchandise into the United States by means of a false customs declaration, *United States v. Meldish*, 722 F.2d 26, 27 (2d Cir. 1983); and *Dreher* concluded it did not apply to convictions for mail fraud and conspiracy to commit mail fraud, *United States v. Dreher*, 115 F.3d 330, 332-33 (5th Cir. 1997). In holding that § 921(a)(20(A) did not apply, *Stanko* reasoned that "none of [FMIA's] provisions . . . require the Government to prove an effect on competition or consumers as an element of the offense." *Id.* at 417. Similarly, the *Dreher* court concluded that the plain meaning of "offenses" referred solely to the charged violation of law and not to the possible incidental effects of a defendant's activities. *Dreher,* 115 F.3d at 332.

However, the district court in *McLemore* held that the § 921(a)(20(A) exclusion applied to convictions for rolling back odometers, in violation of 15 U.S.C. §§ 1984 and 1990c(a), because these convictions were "meant to punish an 'unfair trade practice.'" *United States v. McLemore*, 792 F. Supp. 96, 98 (S.D. Ala. 1992). The *McLemore* court concluded that the government must live with its decision to prosecute the defendant's odometer rollback activity as a Title 15 trade offense, rather than as Title 18 mail fraud or wire fraud offense. *Id.*

Accordingly, to determine whether Schultz's previous conviction is excluded under the § 921(a)(20)(A) exclusion,

we focus on the elements of the predicate conviction. In order for the exclusion to apply under "regulation of business practices," the government would have been required to prove, as an element of the predicate offense, that competition or consumers were affected; possible incidental effects are not relevant. The elements of Schultz's § 1029(a)(7) conviction are: (1) knowingly trafficking in a telecommunications instrument that has been modified or altered to obtain unauthorized use of telecommunications services; (2) intent to defraud; and (3) conduct which affected interstate commerce. *United States v. Schultz*, 2008 WL 2477583, *3 (N.D. Ind. June 13, 2008). Essentially, Schultz's § 1029(a)(7) conviction was modifying telecommunication instruments for the purpose of stealing cable.

Similar to *Stanko*, *Meldish*, and *Dreher*, the government was not required to prove that Schultz's conduct had an effect on competition or consumers. Unlike *McLemore*, Schultz's conviction was under Title 18, which regulates crimes and criminal procedure and not Title 15, which regulates commerce and trade. Therefore, the § 921(a)(20)(A) exclusion does not apply to Schultz's predicate conviction. That the government had to prove that Schultz's conduct affected interstate commerce does change this analysis: Congress' commerce authority only extends to those activities that substantially affect interstate commerce and accordingly, many criminal statutes include such a jurisdictional nexus. *See United States v. Lopez*, 514 U.S. 549, 558-59 (1995); *United States v. Bell*, 70 F.3d 495, 498 (7th Cir. 1995) (holding that The Gun-Free School Zone Act (from *Lopez*) was unconstitu-

tional because it was not an essential part of a larger regulation of economic activity and it did not contain a jurisdictional element which would ensure that the firearm possession in question affected interstate commerce).

### 2. Whether The Statute At Issue Is Impermissibly Vague

Relying on the dissent in *Stanko*, Schultz also argues that § 921(a)(20)(A) is impermissibly vague. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness such that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.*" Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (citations omitted). Schultz argues that because § 921(a)(20)(A) fails to specify what offenses are included under "other similar offenses relating to the regulation of business practices," ordinary individuals are left to guess as to whether their conduct is criminally prohibited by statute. Appellant's Br. at 8.

We do not find this statute impermissibly vague. According to its terms, § 921(a)(20)(A) excludes those "[f]ederal or state offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices." In the final phrase, the word "similar" limits the term "offenses," so that it refers back to the three enumerated offenses, and is further limited by "relating to the regula-

tion of business practices." Accordingly, an ordinary individual would have notice that the § 921(a)(20)(A) exception applies only if he or she committed an enumerated or similar offense related to the regulation of business practices.

### B.  A *Franks* Hearing

Schultz next argues that the district court should have held a *Franks* hearing to test the validity of the affidavit that was used to obtain the search warrant for his home. We review a district court's decision to deny a defendant a *Franks* hearing for clear error. *United States v. McAllister,* 18 F.3d 1412, 1416 (7th Cir. 1994).

In order to obtain a *Franks* hearing, Schultz needed to make a "substantial preliminary showing" that the affiant had intentionally or recklessly included a false statement in the affidavit, and that the false statement was material, in the sense that it was necessary to find probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). The standard is not whether the affidavit contains a false statement, but whether the affiant knew or should have known that a statement was false. *United States v. Jones*, 208 F.3d 603 (7th Cir. 2000).

Here, the affiant stated that he relied on information provided by three "concerned citizen" witnesses, identified as Witnesses 1, 2, and 3. At a hearing before the district court, Schultz made an offer of proof regarding what he believed the evidence would show if he was granted a *Franks* hearing. Schultz offered to prove that

Witness 1 was his sister, who had an identified drug problem, may have been in police custody at the time she gave the statement, and was released after the affidavit was submitted; and Witness 3 was Schultz's ex-wife who was involved in a child custody battle with him. Based on this information, Schultz contends that it was a misrepresentation for the affiant to identity these witnesses merely as "concerned citizens." At the hearing to determine whether a *Franks* hearing was necessary, the district court asked: "Tell me why [the agent] should have known that, either of those things." June 12, 2008 Tr. at 39. The defense responded, in part: "The agent was clearly talking to these two women . . . if he was looking into the background on the Defendant, as he was, and talking to the ex-wife and the sister, then he should have known." *Id.* The district court found that Schultz failed to make an adequate showing for a *Franks* hearing.

We do not find that the district court clearly erred in denying Schultz's request to conduct a *Franks* hearing. A careful review of the record demonstrates that Schultz failed to show that the affiant intentionally or recklessly included false statements in his affidavit, or that the statements he asserts were false were material, in the sense that they were necessary to find probable cause.

### C. Schultz's Statements

Finally, Schultz argues that the district court erred in denying his motion to suppress the statements he made when his home was searched, because he was not given

his *Miranda* warning. The government contends that this issue is moot because these statements were the basis of Count Two in the indictment, which was dismissed, and were not otherwise used as evidence. Schultz counters that this issue is not moot because he agreed to proceed by a bench trial with stipulated facts only because the district court had denied his motion to suppress (as well as denying his other motions). Appellant's Reply Br. at 6.

Schultz fails to present any evidence that his waiver of a jury trial was invalid, nor do the evidentiary and factual stipulations made by the parties appear improper. In addition, we find that Schultz fails to demonstrate that he was prejudiced by his statements, as the government did not use them at trial. Accordingly, we find no merit to his argument.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the district court.