**In re Donald Dean EGBERT and Cynthia Kaye Egbert, Debtors.**

No. 4:07–BK–11689.

United States Bankruptcy Court, E.D. Arkansas, Little Rock Division.

April 10, 2008.

Howard L. Martin, Attorney at Law, Cabot, AR, for Debtors.

## *MEMORANDUM OPINION*

RICHARD D. TAYLOR, Bankruptcy Judge.

Before the court is the Objection to Confirmation of Fifth Amended Chapter 13 Plan [the Objection] filed by eCast Settlement Corporation, assignee of FIA Card Services aka Bank of America and GE Money Bank/Sam's Club [eCast]. On March 30, 2007, Donald Dean Egbert and Cynthia Kaye Egbert [the debtors] filed a joint petition under Chapter 13 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended. The debtors are above median income and, accordingly, claim expense deductions equaling the Internal Revenue Service [IRS] Local Standard allowances for their house and two vehicles; they actually pay a lower amount in debt servicing each obligation.

eCast objected to the debtors' disposable income calculation, asserting that the debtors' are entitled to deduct only their actual expenses on their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income [Form B22C]. The court held a hearing on eCast's Objection on December 12, 2007. The parties agreed to submit briefs. For the reasons stated below, the court overrules the Objection.

## Jurisdiction

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, as applied to this proceeding through Federal Rule of Bankruptcy Procedure 9014.

## Findings of Fact

The pertinent facts in this case have been stipulated as follows:

11. The Debtors' annualized current monthly income ($68,184.00) is above the applicable state median figure ($40,738.00) and thus, the applicable commitment period is sixty (60) months.

12. Based on the Debtors' calculations, the Debtors' fifth amended Chapter 13 Plan proposes to pay $360.00 monthly for sixty (60) months providing approximately 12% distribution to general unsecured creditors. Net of the estimated Chapter 13 Trustee's fees of 4.9% ($1,058.40), the Plan proposes to distribute $2,550.00 in attorney's fees, $7,268.64 for a GMC vehicle, $3,352.65 for a Saturn vehicle, and approximately $7,370.31 to general unsecured creditors, whose claims total $66,153.30 as of December 27, 2007 (See Claims Register).

13. The Debtors own real property located at 1280 Kerr Station Road, Cabot, Arkansas. Schedule D of the Bankruptcy petition reports a mortgage payment of $343.75.

14. The IRS Local Standard Allowance for "housing and utilities; mortgage/rent expense" for a family of two residing in Lonoke County, Arkansas (where the Debtors' Bankruptcy petition indicates they reside) is $564.00.

15. At Line 25B of Form B22C, Debtors deduct $198.21, which is the difference between the IRS Local Standard Allowance for "housing and utilities; mortgage/rent expense" for a family of two residing in Lonoke County, Arkansas and their actual monthly mortgage payment of $365.79, as reported on Form B22C. At Line 47(c) of Form B22C, Debtors deduct their actual monthly mortgage payment amount of $365.79, for a total deduction of $564.00 (equal to the IRS Local Standard Allowance amount of $564.00) for their mortgage expense.

16. eCast asserts that the Debtors are entitled to deduct $365.79, which is the actual amount of their monthly mortgage payment, as reported on Form B22C.

17. Schedule B of the Bankruptcy petition reports that the Debtors have an interest in two vehicles, a 2002 GMC Sierra and a 2003 Saturn Vue. Schedule D reports liens of $7,268.64 for the GMC and $3,352.65 for the Saturn. According to the Debtors' calculations on the second amended From B22C, the monthly payments for these vehicles, averaged over sixty (60) months as required by the Bankruptcy Code are $122.00 for the GMC and $56.00 for the Saturn.

18. At Line 28 of Form B22C, the Debtors deduct $349.00, which is the difference between the IRS Local Standard allowance amount of $471.00 for "transportation; vehicle ownership/lease expense; Vehicle 1" and $122.00, which is the amount the Debtors report as their actual monthly cost for Vehicle 1, the GMC Sierra. At Line 47(a) of Form B22C, Debtors deduct this $122.00, for a total deduction of $471.00 (equal to the IRS Local Standard Allowance amount of $471.00 for their monthly car expense).

19. eCast asserts that the Debtors are entitled to deduct $122.00 which is the Debtors' Form B22C calculation of their monthly car payment on the GMC Sierra.

20. At Line 29 of Form B22C, the Debtors deduct $276.00, which is the difference between the IRS Local Standard allowance amount of $332.00 for "transportation; vehicle ownership/lease expense; Vehicle 2" and $56.00, which is the amount the Debtors report as their actual monthly cost for Vehicle 2, the Saturn Vue. At Line 47(b) of Form B22C, Debtors deduct this $56.00, for a total deduction of $332.00 (equal to the IRS Local Standard Allowance amount of $332.00 for their monthly car expense[)].

21. eCast asserts that the Debtors are entitled to deduct $56.00 which is the Debtors' Form B22C calculation of their monthly car payment on the Saturn Vue.

Stipulation of Facts and Issues ¶ 11–21.

## Discussion

■ When a trustee or an unsecured creditor objects to the confirmation of a proposed chapter 13 plan, § 1325 requires that the plan may be approved only if it proposes to pay unsecured claims in full or "provides that all of the debtor's projected disposable income to be received in the applicable commitment period ... will be applied to make payments to unsecured

creditors under the plan." 11 U.S.C. § 1325(b)(1). Here, the debtors' plan provides for less than full payment of unsecured claims; accordingly, the court may not confirm the debtors' plan unless it provides that the debtors will pay all of their projected disposable income into the plan.

At issue is whether the debtors may deduct the full IRS Local Standard allowance amount for "housing and utilities; mortgage/rent expenses" and "transportation ownership/lease expenses; Vehicles 1 and 2" when their actual monthly payments on each expense are less than the IRS Local Standard amount. eCast makes four arguments in support of its contention that the debtors are restricted to only their actual monthly expenditures. First, eCast argues that "[a]n expense amount far in excess of [d]ebtors' actual expenditure is not reasonably necessary and therefore is not allowed under 11 U.S.C. § 1325(b)(2)." eCast's Brief in Support of Objection To Confirmation of Fifth Amended Chapter 13 Plan at 3. Second, eCast asserts that the "use of the word 'applicable' to modify 'monthly expense amounts' [in § 707(b)(2)(A)(ii)(I)] means the Standards are only to be used by those debtors who actually incur the type of expenses covered by the Standards, and only to the extent that they actually incur the particular expenses—i.e., the Standard is not a fixed allowance, but, rather, a

cap." *Id.* at 10. Third, eCast contends that prohibiting the debtors from utilizing the entire IRS Local Standard when they are actually spending less than that amount is consistent with the IRS's instructions regarding the use of the IRS Local Standards and the IRS's Internal Revenue Manual. *Id.* at 12. Finally, eCast maintains that its interpretation of §§ 1325 and 707 is consistent with the legislative intent and policy goals of BAPCPA. *Id.* at 15.

### A. Reasonably Necessary

■ eCast's first argument is that the debtors' use of the Local Standards is not "reasonably necessary" to the extent that this amount exceeds the debtors' actual expenses. According to eCast, "The importation of the IRS' Local Standards by Congress into section 707 does not remove the reasonably necessary requirement of section 1325 for Chapter 13 debtors ...." eCast's Brief in Support of Objection To Confirmation of Fifth Amended Chapter 13 Plan at 3.

"Disposable income," an expressly defined term,[1] is determined by taking the debtor's "currently monthly income"—also a defined term[2]—and subtracting amounts reasonably necessary for the debtor's maintenance and support. Because the debtors' income exceeds the median amount for the State of Arkansas, § 1325(b)(3) requires the debtors to calcu-

---

1. "Disposable income" is defined, in relevant part, as "current monthly income received by the debtor ... less amounts reasonably necessary to be expended—(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and (ii) for charitable contributions ... in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made...." 11 U.S.C. § 1325(b)(2)(A)(i)-(ii).

2. "Current monthly income" is defined, in relevant part, as "the average monthly income from all sources that the debtor receives ... without regard to whether such income is taxable income, derived during the 6–month period ending on—(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii)...." 11 U.S.C. § 101(10A).

late their "[a]mounts reasonably necessary to be expended" in accordance with Form B22C, better known as the "means test." The means test, principally designed to determine if a chapter 7 proceeding should be dismissed or converted to a chapter 13, determines expenses in accordance with IRS National and Local Standards. This procedure differs significantly from the procedure used prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), effective October 17, 2005. Prior to BAPCPA, debtors would subtract their monthly expenses reported on Schedule J from monthly income reported on Schedule I. Courts had discretion in determining whether the listed expenses were reasonably necessary for the support of the debtor and his or her dependants.

But in the aftermath of BAPCPA, courts have had to address situations where an abovemedian debtor's actual loan payments are less than the IRS Local Standards. Prior to BAPCPA, the actual payment amount would control. Now, § 1325 provides that "[a]mounts reasonably necessary to be expended [by above-median income debtors] shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)...." 11 U.S.C. § 1325(b)(3). Courts are split as to how to calculate the expense component for § 1325(b).

At least one court has concluded that "[§ ] 1325(b)(3) should not be interpreted as categorically substituting the [§ ] 707(b)(2) expense restrictions for the 'reasonably necessary' expense requirement already imposed by [§ ] 1325(b)(2)," but instead "should be interpreted as offering a further guideline for ensuring that the expenses claimed by an above-median debtor are reasonably necessary."

*In re Briscoe,* 374 B.R. 1, 5 n. 2 (Bankr. D.C.2007) (quoting *In re McGillis,* 370 B.R. 720, 730–31 (Bankr.W.D.Mich.2007)) (alterations added in Briscoe). In *McGillis,* the trustee objected to confirmation of the debtors' chapter 13 plan, alleging that the debtors were not committing to their unsecured creditors all of their disposable income as required by § 1325(b). 370 B.R. at 722. Specifically, the trustee argued that the debtors could not claim a deduction for loan payments that they did not intend to make. *Id.* at 727. The court agreed with the trustee, explaining as follows:

Courts have no choice now but to use the debtor's average historical earnings to calculate the income component of Section 1325(b) disposable income because that is how BAPCPA defines "current monthly income." However, Congress elected not to impose a similar definitional constraint upon the calculation of the expense component. Rather, it simply left the deduction of all expenses, whether they be for maintenance and support, charity, or business, to "those amounts reasonably necessary to be expended." 11 U.S.C. § 1325(b)(2). Likewise, Congress did not replace this phrase with a mandate to the effect that support and maintenance expenses "shall mean those amounts determined under Sections 707(b)(2)(A)(i)-(iii) and (B)" or something similar when the debtor's currently monthly income exceeds the Section 1325(b)(3) limit. Instead, Congress repeated in Section 1325(b)(3) the very same phrase that it had already used to describe permissible deductions in Section 1325(b)(2): that is, only those deductions that are "reasonable necessary to be expended." Indeed, this is the same phrase that was used to describe permissible support and maintenance expenses prior to BAPCPA. However,

the 2005 amendments did elaborate upon this familiar concept by imposing yet another limitation, that being that the deductions claimed by the above-median-income debtor as reasonably necessary must also "be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2) . . . [.]" 11 U.S.C. § 1325(b)(3).

[*In re*] *Farrar–Johnson*, [353 B.R. 224 (Bankr.N.D. Ill.2006),] in interpreting this additional limitation, perfunctorily concluded that "[t]hat section states plainly that disposable income 'shall' be determined under section 707(b)(2) using the IRS standards," 353 B.R. at 228, without giving any consideration whatsoever to the equally important phrase "in accordance with." "In accordance," though, simply means in agreement or in conformance. Indeed, Congress used the same phrase in BAPCPA to amend immediately preceding Section 1325(b)(2) when it excepted from current monthly income support payments received for a dependent child "made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for each child . . . [.]" It is unlikely that anyone would suggest that "in accordance" as used in that subsection means that the applicable bankruptcy laws ordering the support are to override the bankruptcy court's independent consideration of whether the expenditure of the same is required. Otherwise, the additional reference to the reasonable necessity of the payments in that clause would be superfluous. Instead, the phrases "applicable nonbankruptcy laws" and "to the extent reasonably necessary to be extended" must be interpreted as being conjoined by "in accordance with" so as to complement each other. In other words, a debtor may exempt from his current monthly income only those child support payments that are made in conformance with applicable nonbankruptcy law. Stipends from an indulgent uncle will not be excepted. However, even court-ordered child support is not automatically excluded because the debtor must also establish to the bankruptcy court's own satisfaction that the expenditure of that support is reasonably necessary for the child.

Similarly, Section 1325(b)(3) should not be interpreted as categorically substituting the Section 707(b)(2) expense restrictions for the "reasonably necessary" expense requirement already imposed by Section 1325(b)(2). Rather, it should be interpreted as offering a further guideline for ensuring that the expenses claimed by an above-median-income debtor are reasonably necessary. Put differently, Section 1325(b)(3) imposes the same requirement upon an above-median-income debtor as it does upon all other debtors: amounts claimed as expenses under Section 1325(b)(3) must in fact be ultimately expended. [*In re*] *McPherson*, 350 B.R. [38,] 45 [(Bankr. W.D.Va.2006)]. However, Section 1325(b)(3) imposes upon an above-median-income debtor the further requirement that all planned expenditures must also agree with the expense limitations of Sections 707(b)(2)(A) and (B). If that debtor's planned expenses exceed what is permitted, then the debtor must conform his Section 1325(b) deductions by reducing them to the amounts allowed by those subsections. On the other hand, the converse is not true, for if the debtor's planned expenses are less, then his Section 1325(b) deductions must still be that lesser amount because that is all that he in fact plans to expend.

*Id.* at 729–30.

Courts disagreeing with *McGillis* conclude that "[§ ] 1325(b)(3) does not supple-

ment the phrase 'amounts necessary to be expended' in § 1325(b)(2)—it defines it. The only possible criteria for determining the reasonableness of a particular expense for purposes of calculating a debtor's disposable income are those set forth in § 707(b)(2)." *Briscoe,* 374 B.R. at 5 n. 2. For example, in *In re Smith,* 383 B.R. 441 (Bankr.E.D.Wis.2008) (slip copy), the trustee, relying on *McGillis,* argued that "even if a court determines that § 707(b)(2) seems to allow a debtor to subtract a certain expense, that court still must conduct an analysis to determine whether that expense is 'reasonably necessary' to be spent for the maintenance or support of the debtor." *Id.* at 446–47. The court declined to follow *McGillis,* stating:

> But § 1325(b)(3) says that "amounts reasonably necessary to be expended ... *shall* be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)" for above-median debtors. (Emphasis added.) The word "shall," of course, is mandatory, not permissive. This language gives an above-median-income debtor no choice but to look to subparagraphs (A) and (B) of § 707(b)(2) to determine whether her expenses are "reasonably necessary." *See [Farrar–Johnson],* 353 B.R. [at] 228–29 (Section 1325(b)(3) "states plainly that disposable income 'shall' be determined under Section 707(b)(2) using the IRS standards.... Although context may sometimes suggest otherwise, 'shall' typically means 'must.' ")[.]

> ...

The problem this Court has with the *McGillis* court's interpretation of "in accordance with" is that the phrase appears in a different context in § 1325(b)(2) than it does in § 1325(b)(3). In § 1325(b)(2), the term "in accordance" occurs within the phrase "other than child support payments ... made in accordance with applicable nonbankruptcy law *to the extent* reasonably necessary to be expended for such child." (Emphasis added)[.] Crucially, in (b)(2) the terms "in accordance with" and "reasonably necessary" are linked by the term "to the extent." The presence of the words "to the extent reasonably necessary" gives the bankruptcy court latitude, as the *McGillis* court observed, to exercise some discretion in determining whether the child support payments are, indeed, "reasonably necessary" for the maintenance or support of the child.

In marked contrast, the term "in accordance" occurs in § 1325(b)(3) within the phrase "[a]mounts reasonably necessary to be expended under paragraph (2) ... shall be determined in accordance" with § 707(b)(2). Congress did not include the phrase "to the extent" in § 1325(b)(3). While § 1325(b)(2) clearly states that the child support and other payments for a dependent child will be exempted from inclusion in current monthly income *only* if those payments are made in accordance with nonbankruptcy law *to the extent* reasonably necessary to be expended for the child, § 1325(b)(3) states that the amounts determined to be reasonably necessary under § 1325(b)(2) *shall* be determined *in accordance with* § 707(b)(2)(A) and (B)—period. The term "reasonably necessary" in § 1325(b)(3) is not superfluous—it is the very term that the section defines. For that reason, this Court does not agree that courts may conduct a separate "reasonably necessary" analysis beyond § 707(b)(2).

*Id.* at 726–29 (emphasis in original).

Like *Briscoe* and *Smith,* this court also declines to follow *McGillis,* as a plain-meaning analysis of § 1325(b)(3) demonstrates that Congress removed all discre-

tion from courts in determining "amounts reasonably necessary to be expended."

### B. "Applicable" v. "Actual"

█ eCast next argues that because "applicable" modifies "monthly expense amounts" in § 707(b)(2)(A)(ii)(I), a debtor may deduct an expense under the IRS Local Standards *only* if the debtor *actually incurs* the expense and only to the *extent* that the debtor actually incurs the expense. In this instance, the debtors actually incur the expense; therefore, the court need only address the *extent* of that expense. Essentially, eCast is arguing that the amounts specified under the IRS Local Standards are "caps" and not fixed allowances. Section 707(b)(2)(A)(ii)(I) states that "[t]he debtor's monthly expenses *shall* be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides...." (Emphasis added). Courts allowing the IRS Local Standards deduction, regardless of the debtor's actual expense, draw a sharp distinction between the use of the words "applicable" and "actual," asserting that each word has "its own distinct meaning because each term, used in the same sentence, modifies a particular expense category." *In re Ransom*, 380 B.R. 799, 804 (9th Cir. BAP 2007). According to these courts, "the use of these two terms 'indicates Congressional intent to *distinguish* between the two classes of expenses.'" *Id.* (quoting *In re Swan*, 368 B.R. 12, 18 (Bankr.N.D.Cal.2007)) (emphasis added in *Ransom*).

Such courts, utilizing a plain-meaning approach, interpret the term "applicable" as "'an adjective that modifies the "amounts specified" in the Standards.'" *Id.* (quoting *In re Chamberlain*, 369 B.R. 519, 524 (Bankr.D.Ariz.2007)); *see also Briscoe*, 374 B.R. 1 at 10 ("The simplest way to interpret the modifier 'applicable' is to read it as being subordinate to the same limiting phrase ('specified under the ... Local Standards') as the object ('monthly expense amounts') that it modifies."). "Applicable" does not modify "debtor's monthly expenses," "'which appears at the beginning of § 707(b)(2)(A)(ii)(I).'" *Ransom*, 380 B.R. at 804 (quoting *Chamberlain*, 369 B.R. at 524). "This reading puts an end to the apparent ambiguity in the term 'applicable,' for it is clear that, within the context of the Local Standards ... the term must refer to the varying expense amounts listed for individuals subject to different circumstances." *Briscoe*, 374 B.R. at 10. Therefore, "whether a monthly expense amount as specified under the Local Standards is applicable to the debtor depends on the number of vehicles he or she owns or leases and on where he or she resides." *Ransom*, 380 B.R. at 804 (citing *In re Haley*, 354 B.R. 340, 343–44 (Bankr. D.N.H.2006)). "For example, the 'applicable' housing expense for a debtor with a family of two or less in the District of Columbia is $1,012, whereas the 'applicable' expense for a debtor living in the same locale with four or more persons is $1,369." *Briscoe*, 374 B.R. at 10.

Additionally, these courts point out that "unlike the IRS guidelines which explicitly provide that the local standards serve merely as *caps* on actual expenditures, there is no reference in section 707(b)(2)(A)(ii)(I) to the use of the local standards as a cap." *In re Rezentes*, 368 B.R. 55, 60 (Bankr.D.Hawai'i 2007) (citing *In re Fowler*, 349 B.R. 414, 418 (Bankr. D.Del.2006)) (emphasis added). As Judge Euguene R. Wedoff explained:

> The IRM plainly provides for [a cap on the debtor's actual expenses]: "Unlike

the national standards, the local standards for housing, utilities, and transportation serve as a cap. The taxpayer is allowed the local standard or the amount actually paid, whichever is less." IRM § 5.19.1.4.3 ¶ 2. However, because § 707(b)(2)(A)(ii)(I) provides that the debtor's allowed expense deductions "shall be" the "amounts specified" under the Local Standards—and because the statute makes no provision for reducing the specified amounts to the debtor's actual expenses—a plain reading of the statute would allow a deduction of the amounts listed in the Local Standards even where the debtor's actual expenses are less. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242[, 109 S.Ct. 1026, 103 L.Ed.2d 290] (1989) ("The plain meaning of legislation should be conclusive, except in 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' ").

The Honorable Euguene R. Wedoff, United States Bankruptcy Judge, Northern District of Illinois, *Means Testing in the New § 707(b)*, 79 Am. Bankr.L.J. 231, 256 (2005).

"Other courts have reached the opposite conclusion, holding (mostly in the context of vehicle ownership expenses) that debtors cannot claim deductions under the IRS local standard for expenses that they do not actually incur." *Rezentes*, 368 B.R. at 61 (citing *In re Ceasar*, 364 B.R. 257, 262 (Bankr.W.D.La.2007); *In re Slusher*, 359 B.R. 290, 309 (Bankr.D.Nev.2007); *In re Devilliers*, 358 B.R. 849, 859 (Bankr. E.D.La.2007); *In re McGuire*, 342 B.R. 608, 613 (Bankr.W.D.Mo.2006); *In re Carlin*, 348 B.R. 795, 798 (Bankr.D.Or.2006); *In re Wiggs*, 2006 WL 2246432, at *2–3 (Bankr.N.D.Ill.2006) (unpublished); *In re Hardacre*, 338 B.R. 718, 728 (Bankr. N.D.Tex.2006)). These courts note that

"applicable" can be interpreted "in several different ways." *Id.* (citing *Slusher*, 359 B.R. at 308 n. 33). Additionally, they conclude that:

"Had Congress intended to indiscriminately allow all expense amounts specified in the National and Local Standards, it would have written 707(b)(2)(A)(ii)(I) to read, 'The debtor's monthly expenses shall be the monthly expense amounts specified under the National Standards and Local Standards . . .' rather than 'The debtor's monthly expenses shall be *the debtor's applicable* monthly expense amounts specified under the National and Local Standards.' "

*Id.* (quoting *Slusher*, 359 B.R. at 309) (emphasis in Slusher). Finally, these courts reason that " 'Congress'[s] decision to use the IRS standards within the Bankruptcy Code strongly suggests that courts should look to how the IRS determined those standards; that is, as to how the IRS would have applied them in similar circumstances.' " *Id.* (quoting Slusher, 359 B.R. at 309). If Congress did not want courts to look to "the IRS's own interpretations of its standards" when it adopted the IRS standards in the Code, then it should have explicitly said so. *Id.* at 61–62.

For example, in *Rezentes*, the above-median debtors calculated their chapter 13 plan payments by "deducting from their income the IRS local standard housing expense even though the debtors' actual housing expense [was] substantially less." 368 B.R. at 55. The court adopted the rationale of those courts holding that debtors cannot claim deductions under the IRS local standard for expenses that they do not actually incur and concluded that "for purposes of calculating projected disposable income, debtors may deduct the local standard housing expense or their actual

housing expense, whichever is less." *Id.* at 62.

■■ This court cannot agree. First, in examining the meaning of a statute, the court must first look to the statute's plain language. *United States v. Stanko*, 491 F.3d 408, 413 (8th Cir.2007). "Where the language of a statute is 'unambiguous, the statute should be enforced as written unless there is clear legislative intent to the contrary.' If the intent of the statute is clear, the judicial inquiry ends." *Haug v. Bank of Am.*, 317 F.3d 832, 835 (8th Cir. 2003) (citations omitted). Here, this court finds more persuasive the rationale of those courts that conclude that the term "applicable" refers "to the varying expense amounts listed for individuals subject to different circumstances," *Briscoe*, 374 B.R. at 10, as these courts properly analyze the statute using a plain-meaning approach.

Second, at least five courts presented with the same issue as in the present case have—either explicitly or implicitly—rejected the rationale of *Rezentes* and allowed debtors to utilize the full IRS Local Standard deduction, even when the debtors' actual expenditure was less than that amount. *Briscoe*, 374 B.R. at 4–5 (holding that above-median debtor "is entitled to use the Local Standards figure even if her actual housing expense figure is lower"); *In re Musselman*, 379 B.R. 583, 589 (Bankr.E.D.N.C.2007) (holding that above-median debtor whose housing and vehicle expenses were lower than amount specified under the IRS Local Standards was permitted to use Local Standards figure because the IRS Local Standards were not ceilings but instead mandatory deductions to which debtor was entitled); *In re Barrett*, 371 B.R. 855, 857 (Bankr.S.D.Ill.2007)

(holding that above-median debtor could use the IRS Standard housing and vehicle ownership expense deductions, even though her actual monthly expense deductions were less); *Swan*, 368 B.R. at 21 (holding that above-median debtor whose actual housing expense was lower than the IRS standard may nevertheless deducted the standard amount on Form B22C); *In re Phillips*, 382 B.R. 153, 172 (Bankr. D.Mass.2008) (holding that above-median debtor was entitled to use IRS Local Standard housing deduction for which she qualified based on the area in which she lived and the size of her household even though the debtor's monthly rental expense of $250 was considerably less than the amount allowed as a housing expense under the IRS Local Standards).

Third, the court concurs with the *Fowler* court and Judge Wedoff' s conclusion that the amounts set forth in the IRS Local Standards are fixed expense allowances and not caps on the debtor' actual expenses in the covered categories.

The court acknowledges that a recent Eighth Circuit Bankruptcy Appellate Panel [BAP] opinion applies a distinguishable but, by extension, contrary analysis to *Fowler*. In *In re Wilson*, above-median debtors deducted the applicable IRS Local Standard for a vehicle which they owned outright. 383 B.R. 729, 730–31 (8th Cir. BAP 2008). The BAP concluded that this deduction was "only applicable if a debtor is in fact incurring such an expense." *Id.* at 732–34.[3] The BAP prefaced its analysis with the conclusion that § 707(b)(2) expresses "expense limitations" as opposed to allowances. *Id.* at 730–31.

The phrase "expense limitations"[4] implies a "lesser of" or "no greater than"

---

**3.** In support of this conclusion, the BAP referenced the IRS Collection Financial Standards and the IRS Internal Revenue Manual. This analysis will be considered in Part C, *infra*.

**4.** Black's Law Dictionary defines a "limita-

statutory scheme for determining monthly expenses; however, Congress did not choose terms or phrases consistent with that application. Rather, Congress used "shall be" in conjunction with readily ascertainable fixed amounts "specified" in National and Local Standards contrasted with "actual" monthly figures in other specified categories- and subsequently referred to as an "allowance,"[5] not a cap or expense limitation.

Section 707(b)(2)(A)(ii)(V) expressly references the aforementioned "monthly expenses" and permits "an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities ... based on the actual expenses for home energy costs" subject to documentation and justification. Congress refers to the expense amount under the Local Standard as an "allowance," not a "cap" or "expense limitation" and draws a telling distinction by specifically permitting an "allowance" to be modified (increased) by an "actual" expense. Had Congress wished to diminish an "allowance" by an "actual" expense, it would not have chosen the term "allowance" and more likely would have simply limited the "actual" figure by the applicable National or Local Standard. In other words, Congress simply would have adopted more appropriate "lesser of" or "no greater than" language. Congress expressly did just that in § 707(b)(2)(A)(ii)(IV), which provides:

In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, *not to exceed* $1,650 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

(Emphasis added).

By statutorily adopting strict allowances based on National and Local Standards, Congress sought to arrive at a nationwide formula (with specific deviations by locality) for determining monthly expenses for above-median-income debtors. The statutory language suggests an effort to limit excessive mortgage and living expenses enjoyed by above-median-income debtors, presumably abusing the bankruptcy system, to fixed and universal allowances intended as amounts reasonably necessary for any debtor's appropriate living expenses. Congress has the right to decide that any above-median-income debtor is entitled to a standard amount to cover their mortgage and car expenses; had Congress wished to refine the formula to diminish its universal, and perhaps democratic, application, it could have easily done

---

tion" as: "1. The act of limiting; the state of being limited. 2. A restriction." *Black's Law Dictionary* 947 (8th ed.2004). Merriam–Webster's Collegiate Dictionary defines "limitation" as: "1: an act or instance of limiting. 2: the quality or state of being limited. 3: something that limits: RESTRAINT." *Merriam–Webster's Collegiate Dictionary* 722 (11th ed.2006).

**5.** Black's Law Dictionary defines an "allowance" as: "1. A share or portion, esp. of

money that is assigned or granted." *Black's, supra* note 4, at 84. Merriam–Webster's Collegiate Dictionary defines "allowance" as: "1a: a share or portion allotted or granted b: a sum granted as a reimbursement or bounty or for expenses [salary includes cost-of-living—]; esp: a sum regularly provided for personal or household expenses [each child has an—]." *Merriam–Webster's, supra* note 5, at 33.

so by restricting the figure to actual amounts not to exceed the National or Local Standards. Congress did not do so. Courts should not lose sight of this effort by Congress to level the field just because occasionally an above-median-income debtor appears to reap a windfall.

In using the phrase "shall be" and the term "allowance," Congress grants above-median-income debtors a fixed amount of reasonable living expenses in certain categories that fall under the National and Local Standards.

Finally, even courts that interpret "applicable" less restrictively to mean that "the debtor can deduct a vehicle ownership expense under the Local Standards *only if* he or she has such an expense in the first place" would permit the debtors in the present case to claim the full IRS Local Standard amounts for housing and vehicles even though their actual expenditures are less. *Ransom*, 380 B.R. at 804 (emphasis in original) (citing *In re Ross–Tousey*, 368 B.R. 762, 765 (E.D.Wis.2007); *Fokkena v. Hartwick*, 373 B.R. 645, 650 (D.Minn. 2007); *In re Garcia*, No. 07–00268, 2007 WL 2692232 at *4 (Bankr.D.Ariz. Sept. 11, 2007) (slip copy); *In re Canales*, 377 B.R. 658, 665–66 (Bankr.C.D.Cal.2007); *In re Brown*, 376 B.R. 601, 606 (Bankr.S.D.Tex. 2007); *Ceasar*, 364 B.R. at 262; *In re Howell*, 366 B.R. 153, 157 (Bankr.D.Kan. 2007); *Carlin*, 348 B.R. at 798; *McGuire*, 342 B.R. at 613). "Under this reading, though the debtor's 'actual' expense does not necessarily control the amount of the deduction, 'the debtor must still have *some* expense in the first place before the Standard amount becomes "applicable." ' " *Id.* (quoting *Ross–Tousey*, 368 B.R. at 765) (emphasis in *Ross–Tousey*). eCast does not dispute that the debtors have *some* hous-

ing and vehicle expenses; accordingly, under this rationale, the IRS Local Standard amounts are "applicable" to the debtors.[6]

### C. IRS Internal Revenue Manual

■ Resolving eCast's objection also requires the Court to consider whether Congress intended to use the IRS Local Standards as fixed deductions or in a manner more consistent with the IRS Internal Revenue Manual, which directs that "taxpayers will be allowed the local standard or the amount actually paid, whichever is less." IRS Internal Revenue Manual § 5.15.1.7(4).

In *Wilson*, the BAP deferred to the IRS Collection Financial Standards and IRS Internal Revenue Manual, stating that "there can be no doubt that the purpose of these amendments to §§ 707(b) and 1325(b) was to require above-median income debtors to make more funds available to their unsecured creditors, and to do so by limiting the court's authority to allow expenses." 383 B.R. at 733. While this statement is unquestionably true, that purpose is systematically served in those instances where the above-median-income debtor has monthly expenses in excess of the specified allowance amount. Occasionally, and as is the case in this instance, a slight windfall will inure to the benefit of an above-median-income debtor whose actual expenses are below the allowance amount. It is not absurd to conclude that Congress consciously disregarded this possibility when it created an acceptable baseline for determining reasonable living expenses. It is up to Congress to make any changes it might deem appropriate should the consequences prove unacceptable.

---

**6.** This Court's holding is limited to the issue of whether debtors with *some* expense may claim the entire IRS Local Standard amounts. The Court need not address whether a debtor with no actual expenses may claim the IRS Local Standard amounts.

Looking to the language of the statute, the Court finds that the code references the "amounts specified" under the Local Standards, rather than the IRS's method of actually applying these amounts. The IRS Internal Revenue Manual serves as a guide for tax collectors, and Congress's omission of any language referencing the manual or any indication that the Local Standards should serve as a cap demonstrates Congress's intent for the standards to instead provide formulaic uniformity. "The statute contains no directive to use the Local Standards as a cap as suggested by the Financial Analysis Handbook. Official Form B22C, required by F.R.B.P. Interim 1007(b)(6), by design, directs the debtors to insert the 'amount of the IRS Transportation Standards, Ownership Costs,' without consideration of the actual ownership cost." *In re Naslund*, 359 B.R. 781, 791–92 (Bankr.D.Mont.2006).

While this court need not resort to legislative history when the statutory language is clear, *United States v. Cacioppo*, 460 F.3d 1012, 1018 (8th Cir.2006), a review of BAPCPA's legislative history bolsters this court's conclusion, as an earlier version of the statute required debtors to calculate their expense allowances " 'under the applicable National Standards, Local Standards, and Other Necessary Expenses allowance (excluding payments for debts) for the debtor ... in the area in which the debtor resides as determined under *the Internal Revenue Service financial analysis* for expenses in effect as of the date of the order for relief.' " *Fowler*, 349 B.R. at 419 (quoting H.R. 3150, 105th Congress (1998)) (emphasis added and alterations added in *Fowler*). The absence of any reference to the IRS financial analysis in BAPCPA's final version evidences Congress's intent not to bind bankruptcy courts to follow IRS calculations and procedures. "[The code's] reference in § 707(b)(2) to the Local Standards is not a shorthand way of referring to the Financial Analysis Handbook, but rather denotes an entirely separate source of information." *In re Phillips*, 382 B.R. 153, 164 (Bankr.D.Mass.2008) (holding that a chapter 13 plan proposed by an above-median-income debtor who claimed a standard allowance in excess of her actual housing expense passed the best efforts test of § 1325(b)(1)(B)).

Therefore, the court concludes that the proper application of the IRS Local Standards does not limit the debtors' disposable income deductions to their actual housing and vehicle payments.

### D. Public Policy

In the alternative, eCast argues that legislative history and purpose should be considered if the statutory language is not plain. eCast asserts that Congress's intent is best manifested by reference to the IRS manual and Financial Analysis Handbook.

As stated above, this court does not consider the language ambiguous; Congress chose specific language that mandates the application of the allowances set forth in the National and Local Standards.

### Conclusion

For the reasons stated above, eCast's Objection is overruled and the debtor's plan is confirmed.

IT IS SO ORDERED.