# United States Court of Appeals
## For the First Circuit

No. 06-1517

UNITED STATES OF AMERICA,

Appellee,

v.

BELEN NIEVES-CASTAÑO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lynch, Circuit Judge,
Gibson,[*] Senior Circuit Judge,
and Howard, Circuit Judge.

Francisco Valcárcel-Fuster, Assistant Federal Public
Defender, with whom Hector L. Ramos-Vega, Assistant Federal
Public Defender, and Joseph C. Laws, Jr., Federal Public
Defender, were on brief, for appellant.
José Capó-Iriarte, Assistant United States Attorney, with
whom Nelson Pérez-Sosa, Assistant United States Attorney, and
Rosa Emilia Rodriguez-Velez, United States Attorney, were on
brief, for appellee.

March 27, 2007

[*] Of the Eighth Circuit, sitting by designation.

**LYNCH**, <u>Circuit Judge</u>.  Belen Nieves-Castaño was convicted of two weapons charges after a jury trial.  One conviction was for unlawful possession of a machine gun, <u>see</u> 18 U.S.C. § 922(o), while the second was for the unlawful possession a firearm in a school zone, <u>see</u> <u>id.</u> § 922(q)(2)(A).  This court has not had any prior occasion to construe these statutory provisions in relation to the issues presented by this appeal.

Nieves-Castaño appeals both convictions.  She presents a novel issue on appeal: whether the school-zone statute, 18 U.S.C. § 922(q)(2)(A), is unconstitutionally void for vagueness under the Fifth Amendment's Due Process Clause because it fails to specify how to measure the 1000 foot distance from a school that marks the boundary of a school zone.  She also raises sufficiency of the evidence claims on both counts, along with a claim of instructional error on the machine-gun charge.  The constitutional claim, and the sufficiency claims, were raised by Rule 29 motions at trial and after the verdict, and were properly preserved.

We reverse the conviction on the first count and direct entry of a verdict for the defendant.  The prosecution's evidence was insufficient to establish the necessary mens era requirement under <u>Staples</u> v. <u>United States</u>, 511 U.S. 600, 602 (1994).  We affirm the conviction on the second count, and reject the constitutional void-for-vagueness attack.

Nieves-Castaño was sentenced to twenty-seven months of imprisonment on the first count, and to a consecutive sentence of three months on the second count, for a total term of imprisonment of thirty months. She was also sentenced to three years of supervised release, concurrent as to each count. We remand the case to the district court for resentencing in light of our disposition of the first charge.

I.

Nieves-Castaño lived in a third-floor apartment in Building 9 of the Nemesio R. Canales Housing Project in Puerto Rico. She shared the apartment with her mother, her mother's school-age child, and her own two minor sons. On August 30, 2005, a joint FBI and Puerto Rico police operation was investigating drug activity at the housing project, and law enforcement officials obtained and executed a search warrant at Nieves-Castaño's apartment.

An officer with the Puerto Rico Police Tactical Operations Unit was posted outside the building while the warrant was being executed. He saw Nieves-Castaño slide an old black golf bag off the rear balcony of her apartment and onto the ground. Apparently she did this after the police knocked and announced their presence at her apartment door. The officer retrieved the golf bag, which contained an AK-47 rifle.

The police search of the apartment revealed no illegal drugs or drug paraphernalia. After the defendant's arrest, she and her mother were taken to a government building, where agents interviewed them. One of the agents testified that Nieves-Castaño said she was storing the weapon in the golf bag at the request of someone named Alexis, a friend and the owner of the gun, who had asked that she hide it for him. Nieves-Castaño told the agent she had once opened the bag, looked in, and observed that there was a rifle in it, and that she knew it was an AK-47. She did not testify at trial.

II.

A.    Mens Rea That the Weapon Was a Machine Gun

On the machine-gun charge, the district court found that there was sufficient evidence to prove the elements of the offense beyond a reasonable doubt. We review this determination de novo, taking the evidence in the light most favorable to the government, and making all reasonable inferences in the government's favor. United States v. Carucci, 364 F.3d 339, 343 (1st Cir. 2004).

The statute of conviction, 18 U.S.C. § 922(o), provides in relevant part that "it shall be unlawful for any person to transfer or possess a machinegun." Although ownership of the weapon is not required for conviction, see United States v. Escobar-De Jesus, 187 F.3d 148, 176 (1st Cir. 1999), mere possession of the weapon is insufficient. The government must also

-4-

prove beyond a reasonable doubt that the defendant knew the weapon "had the characteristics that brought it within the statutory definition of a machinegun." Staples, 511 U.S. at 602 (discussing a prosecution under 18 U.S.C. § 5861(d) for possession of a machine gun). Pertinently, the government's burden is to prove that the defendant had knowledge of the characteristics that brought the gun within the statutory definition, and not that she had knowledge that the gun was in fact considered a machine gun under federal law. See id.

A machine gun is defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b); see also 18 U.S.C. § 921(a)(23).

The government correctly accepts that Staples's scienter requirement also applies to prosecutions under 18 U.S.C. § 922(o). See Rogers v. United States, 522 U.S. 252, 254 n.1 (1998). One of the rationales relied on in Staples for the mens rea requirement was the potentially harsh penalty for violations of 18 U.S.C. § 5861(d) -- up to ten years' imprisonment. 511 U.S. at 616. The penalty for violating 18 U.S.C. § 922(o) can also include a prison term of up to ten years. See 18 U.S.C. § 924(a)(2).

There is sufficient evidence, from the agent's testimony about the defendant's statements, that Nieves-Castaño both

-5-

possessed and knew there was a rifle in the golf bag, and that she looked into the golf bag once and saw a rifle there. There is also evidence that she knew the rifle was an AK-47. The question is whether the government proved, beyond a reasonable doubt, that she knew this particular AK-47 had the characteristics of an automatic weapon.

The rifle involved here was the commercial version of the AK-47 military weapon. The term "AK" comes from "Automat Kalashnikov," as the weapon was named after its Russian inventor, Mikhail Kalashnikov, who designed it in 1947. The commercial version comes only as a semi-automatic weapon.

While an automatic weapon meets the definition of a machine gun, a semi-automatic weapon does not. Staples, 511 U.S. at 602 & n.1. The commercial semi-automatic AK-47 cannot be made into an automatic weapon without some modification or alteration to give it automatic firing capability. Here the evidence established that a modification had occurred through the alteration of internal parts. The only external evidence on the weapon of this alteration was a small mark or hole.

The government's proof concentrated on expert testimony to the effect that this particular weapon had been modified in order to make it capable of fully automatic fire. This evidence established that the weapon was an automatic weapon, but it did not establish the defendant's mens rea.

An FBI agent determined that the rifle was operable and that it had fully automatic firing capabilities. However, his testimony was that while members of law enforcement suspected the gun had been altered, they had to fire the weapon in order to determine that it was automatic. This was done at a firing range. There was no evidence that the defendant had ever fired the weapon.

The AK-47 was also examined by Minelly Hernandez-Suerta, an expert firearms examiner, who testified that the firearm had been tampered with in its internal mechanisms to make it capable of automatic fire. Hernandez-Suerta suspected that this AK-47 was an automatic weapon because there was a hole or mark between the fire and safety settings of the weapon. But she could not be certain until she had fired it on the range, or examined its internal mechanisms. And she further testified that nothing in her tests permitted her to conclude that Nieves-Castaño had ever held, touched, or fired the AK-47. Additionally, while the small hole suggested to Hernandez-Suerta that the weapon had been altered, she testified that she drew this inference because, as an expert, she knew that this hole was identical to what one would see on the military version of the AK-47. Finally, the expert testified that if she had merely looked at the weapon, and had not noticed the small hole, she would have been unable to determine whether the weapon had been altered to fire automatically.

The requisite mens rea may be established by circumstantial evidence, see Staples, 511 U.S. at 615 n.11, as the government attempted here. As an officer recounted at trial, the defendant said in her interview that the gun was an AK-47 and that she knew it was a rifle because on one occasion she had opened the golf bag and saw the weapon inside. The government sought to infer knowledge that the weapon was automatic from this fact.

Circumstantial evidence includes "external indications signaling the nature of the weapon." Id. But there was no evidence that one would see, simply by looking into the golf bag, a small mark on the weapon between the fire and safety settings.[1] And although that mark informed an expert that perhaps the weapon had been altered to make it fully automatic, there was no evidence that this hole would have similarly tipped off a lay person about the weapon's capabilities -- if anything, the evidence was to the contrary. Importantly, there was no evidence that Nieves-Castaño had any expertise in firearms. Cf. United States v. Backer, 362 F.3d 504, 507 (8th Cir. 2004) (sustaining conviction where the defendant was a firearms collector); United States v. Morgan, 216 F.3d 557, 567-68 (6th Cir. 2000) (sustaining conviction where the

_____

[1] The agent who first recovered the golf bag, and testified that the bag was open, stated only that he could see there was a rifle in it. He made no mention of seeing the small hole on the weapon, or anything else in the bag.

defendant was a "gun enthusiast" and had admitted knowing that automatic weapons have three selector switches).

This was also not a case where the defendant was shown to have fired the weapon, a circumstance which "would make the regulated characteristics of the weapon immediately apparent." Staples, 511 U.S. at 615 n.11.

It is true that because Nieves-Castaño slid the bag off her terrace to avoid its discovery, the jury could infer that she had guilty knowledge. Yet knowledge that one is guilty of some crime is not the same as knowledge that one is guilty of the crime charged. See, e.g., United States v. Hernandez-Bermudez, 857 F.2d 50, 53 (1st Cir. 1988). And while mere possession of a non-automatic gun by a non-felon is not itself a federal crime, the circumstances of this case suggest reasons for the defendant's disposal efforts other than that she knew the gun was an automatic weapon. She had, after all, been asked to hide the weapon. Further, there was testimony that if the gun had turned out not to be automatic, the defendant likely would have been charged with a firearms offense under Puerto Rico law, which provides another explanation for her actions.

Nor is this a case in which the defendant testified, so no question is raised about what inferences a jury may rationally draw from its observation of testimony. See United States v. Sanders, 240 F.3d 1279, 1284 (10th Cir. 2001) (holding that "mere

disbelief of the defendant's testimony is insufficient to carry the government's burden as to knowledge," and reversing a jury verdict for insufficiency of the government's mens rea evidence under 26 U.S.C. § 5861(d)).

The government points out that the golf bag contained other items besides the weapon, specifically a drum magazine and two additional clip-type magazines. The government contends that an inference of mens rea could be drawn from these contents. But there was no evidence linking the clip-type magazines to machine guns specifically. And while the government seems to argue that a drum magazine would <u>only</u> or <u>primarily</u> be of use for an automatic weapon, the record evidence was merely that such a drum magazine <u>can</u> be used with a machine gun.[2] Moreover, the evidence was ambiguous as to whether a person would have seen the drum magazine in the golf bag, once the bag was opened. In any event, and most importantly, there was no evidence that if a lay person had seen the drum magazine in the bag, she would have identified it as such and known that it was meant for automatic weapons, and then drawn the further conclusion that the AK-47 must have been modified to be fully automatic.

It is true the weapon was found in the defendant's apartment. But there were no drugs or other drug paraphernalia to

---

[2] The agent who discussed the drum magazine and clips was later asked why he had a suspicion that this rifle had been altered. Tellingly, he did not mention the drum magazine or the clips as motivating his suspicion.

indicate that its presence there was anything more than what the defendant had said: that she had been asked to hold or hide it for someone else.

In our view, this evidence is simply insufficient to establish, beyond a reasonable doubt, the defendant's knowledge that the rifle possessed the characteristics of an automatic weapon. No reasonable finder of fact could have reached a guilty verdict on the machine-gun charge. We reverse the verdict on Count One and direct entry of a verdict of acquittal.[3]

B. Constitutionality of the School-Zone Statute

We turn to the defendant's appeal from her second conviction. The statute at issue, 18 U.S.C. § 922(q), was originally enacted as part of the Gun-Free School Zones Act of 1990. See Pub. L. No. 101-647, § 1702, 104 Stat. 4789, 4844-45. In its current form, and subject to certain exceptions not pertinent here, the statute applies to any individual who "knowingly . . . possess[es] a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows, or has reasonable cause to believe, is a school zone." 18 U.S.C. § 922(q)(2)(A). The current form of the statute contains amendments enacted in the aftermath of United States v. Lopez, 514 U.S. 549

---

[3] Because we conclude that the evidence was insufficient, we do not reach the claim of instructional error.

(1995), to provide necessary connections to interstate commerce. See Pub. L. No. 104-208, § 657, 110 Stat. 3009, 3379 (1996).

The school-zone prohibition is based on explicit congressional findings that firearms had increasingly been found in and around schools, that concern about these firearms could deter parents from sending their children to school, that the occurrence of violent crimes in school zones had resulted in a decline in the quality of education (an effect having an adverse impact on commerce), and that states and localities had found it very difficult to handle such gun-related crimes themselves. See 18 U.S.C. § 922(q)(1). For example, one news report counted that as of the early 1990s guns were used in and around schools in crimes of violence eight-hundred times a year. See C. Scanlan, Gun-Control Fight Comes to Schools, Phila. Inquirer, May 30, 1993, at C2. The original 1990 statute encouraged state and local authorities to post signs warning that the possession of firearms in a school zone was prohibited. See Gun-Free School Zones Act of 1990, § 1702(b)(5), 104 Stat. at 4845 (codified at 18 U.S.C. § 922 note).

A "school zone" is defined by 18 U.S.C. § 921(a)(25) as (A) "the grounds of . . . a public, parochial[,] or private school;" and (B) the area "within a distance of 1,000 feet from the grounds of a public, parochial[,] or private school." This definition was also part of the original Gun-Free School Zones Act of 1990. See § 1702(b)(2), 104 Stat. at 4845.

Nieves-Castaño's argument is that the statute is unconstitutional on its face because it provides no objective criteria for the measurement of the 1000 foot distance specified in § 921(a)(25)(B). Courts, including our own, have consistently rejected due process vagueness challenges to other firearms provisions in 18 U.S.C. § 922. See, e.g., United States v. Pfeifer, 371 F.3d 430, 437-38 (8th Cir. 2004) (rejecting a challenge to the provision criminalizing weapons possession after a conviction for a misdemeanor crime of domestic violence); White v. Dep't of Justice, 328 F.3d 1361, 1368-69 (Fed. Cir. 2003) (same); United States v. Kavoukian, 315 F.3d 139, 145 (2d Cir. 2002) (same); United States v. Meade, 175 F.3d 215, 222 (1st Cir. 1999) (same); United States v. Purdy, 264 F.3d 809, 811-13 (9th Cir. 2001) (rejecting a challenge to the provision criminalizing possession of a weapon while being an unlawful user of controlled substances). We have found no cases mounting this particular challenge.

Our review of the constitutional challenge is de novo. United States v. Caro-Muñiz, 406 F.3d 22, 26 (1st Cir. 2005). "[A] statute is unconstitutionally vague only if it 'prohibits . . . an act in terms so uncertain that persons of average intelligence would have no choice but to guess at its meaning and modes of application.'" United States v. Councilman, 418 F.3d 67, 84 (1st Cir. 2005) (en banc) (quoting United States v. Hussein, 351 F.3d 9, 14 (1st Cir. 2003)) (ellipsis in original); see also Bouie v. City

of Columbia, 378 U.S. 347, 351 (1964). Nieves-Castaño's constitutional challenge fails because the statute itself adequately put her on notice that her possession of a firearm was unlawful. By the clear terms of the statute, she could only have been convicted if she knew or reasonably should have known that her possession of the firearm was within a school zone, and this scienter requirement ameliorates any vagueness concerns. See Hill v. Colorado, 530 U.S. 703, 732 (2000) (rejecting a vagueness challenge to a statute that prevented individuals from "knowingly" coming within eight feet of another person to engage in certain actions); see also Hussein, 351 F.3d at 14.

Further, the evaluation of the constitutionality of the statute is also made in light of judicial constructions of the statute. See Wainwright v. Stone, 414 U.S. 21, 22-23 (1973). There is ample relevant judicial construction, here and elsewhere, that removes any vagueness concerns. One example suffices. In United States v. Soler, 275 F.3d 146 (1st Cir. 2002), this court provided such a construction. We held that "the government must prove beyond a reasonable doubt that the distance from a school to the actual site of the [prohibited] transaction, not merely to the curtilage or exterior wall of the structure in which the transaction takes place, is 1,000 feet or less." Id. at 154. Soler also endorsed a straight-line method of measurement, rather than pedestrian-route

-14-

measurements.  Id. at 155 n.6; accord United States v. Henderson, 320 F.3d 92, 103 (1st Cir. 2003).

The Soler holding was under 21 U.S.C. § 860(a), which deals with drug offenses that occur "within one thousand feet of [] the real property comprising" a school.  Nonetheless, it provides notice pertinent to the construction of the statute at issue here, which defines a school zone very similarly.  See 18 U.S.C. § 921(a)(25) (defining a school zone as comprising the area "within a distance of 1,000 feet from [school] grounds").

Thus, the statute both gives fair notice to people potentially subject to it and adequately guards against arbitrary and discriminatory enforcement.  Cf. Papachristou v. City of Jacksonville, 405 U.S. 156, 170-71 (1972) (municipal vagrancy law held void for vagueness because it permitted arbitrary enforcement); 1 W. LaFave, Substantive Criminal Law § 2.3(b),(c), at 146, 150 (2d ed. 2003).  No First Amendment interests are involved in the case. Cf. 1 LaFave, supra, § 2.3(d), at 152-53.  Nor is there any risk that a trial court could not properly instruct a jury.  Cf. id. § 2.3(c), at 150-51.  Nor does it raise any concerns about undercutting the Fourth Amendment's reasonableness requirement. Cf. Kolender v. Lawson, 461 U.S. 352, 361 & n.10 (1983) (holding that a modified stop and identify statute was void on vagueness grounds, and declining to reach Fourth Amendment arguments against the statute's validity).

In the end, the defendant's argument devolves into a claim that the government's evidence was insufficient to show that the defendant possessed a firearm within 1000 feet of a school's grounds. That claim fails. As Soler held, "[p]recise measurements may be unnecessary in some cases where the spatial leeway is relatively great and the gap in the claim of proof is relatively small." 275 F.3d at 154. Here, three minor children lived with the defendant, and it would be easy for a jury to conclude that she knew there were two schools nearby, within or just outside her housing project and less than 1000 feet away, and that she regularly passed by those schools. One school was, in fact, located next to the south entrance of the housing project. The prosecution's evidence was that the distance from the main fence of that school to the corner of Building 9 was 636 feet, and that the distance from the entrance of the school to that same corner was 670 feet. The record shows that the other school was even closer. The distance from the corner of Building 9 to that school's fence was 473 feet, and the distance to its entrance was 550 feet. The measurements were made using a small wheel-like device commonly used to measure forensic crime scenes.[4] The government also introduced an aerial photograph

---

[4] It appears from the record that the government measured the distance using a pedestrian route. Under a straight-line measurement, the defendant's apartment would actually be closer to the schools than what the government's measurements indicated.

showing the location of the schools and the defendant's apartment, which was entirely consistent with the measurements.

Whatever the fine points about measurement, there was leeway -- before reaching the 1000 foot mark -- of at least 330 feet between one of the schools and Building 9. This was more than sufficient to cover any refinements in the horizontal and vertical measurement needed to account for the distance between the corner of Building 9 and Nieves-Castaño's apartment. The conviction on Count Two is affirmed.

III.

We vacate the conviction on Count One and direct entry of judgment of acquittal on that count. We affirm the conviction on Count Two and reject the claim that the school-zone firearms statute, 18 U.S.C. § 922(q)(2)(A), is unconstitutionally void for vagueness. We also reject the claim that the government's evidence was insufficient to convict the defendant of this second charge. We remand to the district court for re-sentencing.