[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10956
Non-Argument Calendar

_____

D.C. Docket No. 8:17-cr-00090-SDM-MAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISAAC THOMAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 22, 2020)

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before JORDAN, TJOFLAT and HULL, Circuit Judges.

HULL, Circuit Judge:

After pleading guilty, Isaac Thomas appeals his convictions for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) ("Count 1"), and possession of a firearm within 1,000 feet of a school zone, in violation of 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(4) ("Count 2").  For the first time on appeal, Thomas argues that: (1) both his Count 1 and Count 2 firearm convictions should be vacated because the § 922(g)(1) and (q) statutes violate the Commerce Clause and are unconstitutional; and (2) his Count 1 firearm conviction should be vacated because his plea colloquy failed to establish that he knew that he was a convicted felon at the time he possessed the firearm.

In 2019, this Court affirmed Thomas's two convictions and total sentence. United States v. Thomas, 767 F. App'x 758 (11th Cir. 2019).  Thereafter, the Supreme Court decided Rehaif v. United States, 588 U.S. ___, 139 S. Ct. 2191 (2019), holding that in prosecutions under §§ 922(g) and 924(a)(2), the government must prove that when the defendant possessed the firearm, "he knew he belonged to the relevant category of persons barred from possessing a firearm," such as his status as a convicted felon or as an alien unlawfully in the country.  See Rehaif, 588 U.S. at ___, 139 S. Ct. at 2194-97, 2200.

On October 15, 2019, the Supreme Court granted Thomas's petition for a writ of certiorari, vacated our judgment, and remanded for reconsideration in light of Rehaif.  After that remand, we ordered supplemental briefing.  After review, we:

(1) restate substantial parts of our earlier opinion; (2) add relevant facts and legal analysis as to Thomas's plea and sentencing on Count 1; and (3) review anew Thomas's firearm conviction in Count 1 in light of Rehaif.

## I. FACTUAL BACKGROUND

### A.    Offense Conduct

In January 2017, a fight broke out at a basketball game at a public high school in Plant City, Florida.  After the game ended, several people, including Thomas, resumed the fight a few blocks away from the school.  Local law enforcement officers responded at the scene with their police car's lights and siren activated.

One officer saw Thomas emerge from the crowd while holding a firearm, which Thomas fired.  Thomas then took his firearm, ran down a road, and got into the passenger side of a car.  Officers pursued the car until it crashed.  At that point, Thomas abandoned the car and fled on foot.  As Thomas attempted to flee, he was shot by an officer and apprehended.

Officers recovered a Ruger 9-millimeter firearm, loaded with six live rounds of 9-millimeter ammunition, approximately ten feet away from where Thomas was apprehended.  They also found a spent 9-millimeter shell casing in the place where Thomas was standing when he fired the weapon.  In later interviews with law

3

enforcement officers, Thomas admitted to possessing the Ruger 9-millimeter firearm and to firing it.

As a result, a federal grand jury indicted Thomas on Count 1, possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) ("the § 922(g) offense"), and Count 2, possession of a firearm within 1,000 feet of a school zone, in violation of 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(4) ("the § 922(q) offense").  Under Count 1, the indictment alleged that Thomas was prohibited from possessing a firearm due to a 2012 felony conviction for attempted carjacking.[1]

## B.    Factual Basis for Thomas's Guilty Plea

In August 2017, Thomas pled guilty pursuant to a written plea agreement. As to Count 1, Thomas pled guilty to "knowingly possess[ing] . . . a firearm and ammunition" after "having been previously convicted in any court of a crime punishable by imprisonment for a term exceeding one year, including: **Attempted Carjacking**, on or about August 21, 2012."  As to Count 2, Thomas pled guilty to knowingly possessing a firearm "that had moved in and affected interstate commerce" within 1,000 feet of the grounds of a school, a place Thomas knew or had reasonable cause to believe was a school zone.

---

[1]The indictment did not allege that Thomas was aware of his convicted felon status at the time of the instant unlawful firearm possession.  Thomas's supplemental brief expressly disclaims any Rehaif-based challenge to the sufficiency of his indictment.

4

As part of his plea agreement, Thomas agreed to the following factual basis for his plea.  The factual basis stated, inter alia, that Thomas had previously been "convicted of the felony of attempted carjacking" in 2012 and "[h]is right to possess firearms and ammunition had not been restored."  Thereafter, on January 20, 2017, Thomas held and fired a firearm as he emerged from a crowd that was watching a fight outside of a school.  When police approached, Thomas fled on foot and entered the passenger side of a car.  Police pursued the car until it crashed.  As Thomas fled the vehicle, he was shot by police and apprehended.  Officers found Thomas's loaded firearm, a 9-millimeter Ruger, approximately ten feet from where he was apprehended and recovered a spent round of ammunition from the spot where Thomas was standing when he fired the firearm outside the school.  During an interview with law enforcement, Thomas admitted having and firing the Ruger, but denied pointing it at any law enforcement officer.

The factual basis also established that the Ruger 9-millimeter firearm Thomas possessed traveled in or affected interstate commerce because it was manufactured outside of Florida, where the instant offense occurred.  Specifically, Alcohol, Tobacco, Firearms, and Explosives Special Agent Walt Lanier examined the firearm and determined that it was manufactured in Arizona.

5

## C.    Plea Hearing

At his change-of-plea hearing, Thomas acknowledged that he had discussed his plea agreement with his counsel and that he had not been induced or forced to plead guilty.  The magistrate judge reviewed the terms and conditions of Thomas's plea agreement, the rights Thomas was relinquishing by pleading guilty, the consequences of pleading guilty, and the elements of the two charged offenses.

The magistrate judge summarized the elements of Thomas's two charges. As to Thomas's § 922(g) offense in Count 1, the magistrate judge stated that the government would be required to prove that: (1) before possessing the firearm on or about January 20, 2017, Thomas was a convicted felon whose rights had not been restored; (2) on or about January 20, 2017, Thomas knowingly possessed the Ruger 9-millimeter firearm; and (3) the Ruger 9-millimeter firearm affected interstate commerce, that is, it was manufactured outside the State of Florida. Thomas agreed that he understood this § 922(g) charge and the elements of the offense and pled guilty to Count 1.  In response to the magistrate judge's questioning, Thomas confirmed that he was a convicted felon at the time he possessed the firearm near the school.  Thomas's counsel agreed that the government would be able to prove at trial that the firearm had traveled in interstate commerce and that Thomas was a convicted felon.

6

As to the § 922(q) offense in Count 2, the magistrate judge explained that the government would be required to prove that: (1) Thomas knowingly possessed the Ruger 9-millimeter firearm within 1,000 feet of a school zone; (2) Thomas had reason to believe that he was in a school zone; (3) the firearm had traveled in or affected interstate commerce at some point during its existence; and (4) Thomas acted knowingly.  Again, Thomas agreed that he understood the § 922(q) charge and the elements of this offense and pled guilty to Count 2.

The magistrate judge found that Thomas was competent and capable of entering an informed plea, that his plea was knowingly and voluntarily made, and that his plea was supported by an independent factual basis containing all the essential elements of his offenses.  The magistrate judge recommended that Thomas's guilty plea be accepted.  Without objection, the district court accepted Thomas's guilty plea and adjudged him guilty.

**D.    Presentence Investigation Report**

Thomas's presentence investigation report ("PSI") assigned him a total offense level of 34 and a criminal history category of III.  Because the PSI found that Thomas had fired the firearm at a law enforcement officer who was on the scene, it recommended calculating Thomas's offense level for Count 1, pursuant to U.S.S.G. §§ 2K2.1(c)(1)(A) and 2X1.1(c)(1), by applying the base offense level for attempted murder in § 2A2.1(a)(1).

The criminal history portion of the PSI stated that Thomas had several prior criminal convictions, including: (1) several juvenile adjudications for both felonies and misdemeanors, the last of which resulted in Thomas being sentenced to one year of imprisonment at the Florida Department of Juvenile Justice; (2) a January 31, 2011 conviction, pursuant to a guilty plea, for felony attempted carjacking in Florida state court for which he initially was sentenced to 364 days in prison and three years of probation, but after his probation was revoked on August 21, 2012, he was sentenced to 13 months more in prison; and (3) two July 2012 misdemeanor convictions, pursuant to guilty pleas, for resisting an officer without violence in Florida state court for which he was sentenced to 30 days in prison. The PSI also stated that, in connection with his 2011 attempted carjacking conviction, Thomas "had his civil rights to carry a firearm rescinded and they were never restored." The PSI assigned three criminal history points for Thomas's attempted carjacking conviction and one point each for Thomas's resisting an officer without violence convictions, for a total of five criminal history points.

The PSI's guidelines calculations resulted in an advisory guidelines range of 188 to 235 months' imprisonment. However, the statutorily authorized maximum sentences for Count 1 under §§ 922(g)(1) and 924(a)(2) and Count 2 under §§ 922(q)(2)(A) and 924(a)(4) were less than the minimum of Thomas's advisory guidelines range. Under §§ 922(g)(1) and 924(a)(2), the maximum term of

imprisonment is ten years, and under §§ 922(q)(2)(A) and 924(a)(4), the maximum term of imprisonment is five years.  Also, the term of imprisonment for Count 2 under §§ 922(q)(2)(A) and 924(a)(4) had to run consecutive to any other term of imprisonment imposed.  See 18 U.S.C. § 924(a)(4).  Therefore, Count 1's adjusted advisory guidelines range was reduced to 120 months' imprisonment, the statutory maximum.  See U.S.S.G. § 5G1.1(a) (providing that, "[w]here the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.").  Count 2's adjusted advisory guidelines range was reduced to 60 months' imprisonment, the statutory maximum.  See id.

Thomas filed objections to the PSI, including to whether he had fired his firearm at an officer, most of which are not relevant to his appeal.  We note however, that in his objections, Thomas argued that he served a prison sentence of one year and one month for his attempted carjacking offense and should have received only two criminal history points.  In response, the probation officer stated that Thomas's "total term of imprisonment for this conviction [was] two years and 30 days" and therefore three criminal history points were warranted under the Sentencing Guidelines.  This total imprisonment of two years and 30 days consisted of: (1) his initial 364-day sentence, and (2) his subsequent 13-month sentence after his probation revocation.

9

Prior to sentencing, Thomas also filed a sentencing memorandum and motion for a downward variance, requesting that the district court impose a total sentence of 70 months' imprisonment.  In both his objections to the PSI and his sentencing memorandum, Thomas did not argue (1) that § 922(g)(1) and (q) were unconstitutional, or (2) that the plea colloquy omitted an essential element of either of his charges.

## E.    Thomas's Sentencing

A large part of Thomas's sentencing was taken up with the issue of whether Thomas fired the firearm at a law enforcement officer in an attempt to murder the officer for purposes of calculating his offense level under U.S.S.G. §§ 2K2.5(c)(1)(A), 2X1.1, and 2A2.1(a)(1).  In that regard, the district court viewed video evidence and heard testimony from two law enforcement officers involved in Thomas's apprehension and another officer who investigated the officer-involved shooting of Thomas.  Based on the evidence, the district court found that Thomas had not intended to kill the law enforcement officer when he fired the firearm in the direction of the officer.  However, the district court rejected Thomas's argument that he merely fired the gun into the air to disburse the crowd and found instead that the two-level reckless endangerment enhancement of U.S.S.G. § 3C1.2 applied.

As for his criminal history points, Thomas's objection changed slightly. Thomas argued that his attempted carjacking conviction should have received only two criminal history points because he committed that offense as a juvenile. The probation officer explained that even though Thomas was a juvenile at the time of the offense, he was convicted as an adult, and his total sentence—the initial 364-day prison term plus the 13-month prison term after Thomas's probation revocation—exceeded one year and one month for purposes of assigning three criminal history points under U.S.S.G. § 4A1.2(d)(1).[2] **[When Thomas's counsel agreed with the probation officer that the two sentences should be added together to determine criminal history points, the district court overruled the objection.**

Ultimately, the district court revised Thomas's total offense level down to 32. Thomas's criminal history category remained at III, which yielded an advisory guidelines range of 151 to 188 months' imprisonment. See U.S.S.G. Ch. 5 Part A.

The law enforcement officer in whose direction Thomas had fired the firearm gave a victim impact statement. During his allocution, Thomas apologized to anyone traumatized by his actions and stated that he had "made a mistake out of impulse," but was willing to accept responsibility for what he had done. Thomas insisted, however, that he did not intend to hurt anyone and did not point or fire the

---

[2]While the sentencing transcript indicates that the probation officer stated that Thomas's initial sentence was for 264 days, this appears to be a typographical error, as the PSI stated, without objection, that the sentence was for 364 days.

firearm at any law enforcement officers. After considering the parties' arguments, Thomas's allocution, the advisory guidelines range, and the 18 U.S.C. § 3553(a) factors, the district court imposed the statutory maximum 120-month sentence for Thomas's § 922(g) offense in Count 1, followed by a consecutive statutory maximum 60-month sentence for Thomas's § 922(q) offense in Count 2, for a total of 180 months.

When the district court asked for objections, Thomas's counsel stated that Thomas objected to the procedural and substantive reasonableness of the sentence. Throughout the district court proceedings, Thomas did not claim: (1) that his guilty plea was involuntary; (2) that his plea colloquy omitted an essential element of his § 922(g) offense in Count 1; or (3) that he did not know he was a convicted felon.

## II.  18 U.S.C. § 922(q): POSSESSION OF A FIREARM NEAR SCHOOL

On appeal and for the first time, Thomas argues that his Count 2 conviction under 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(4) should be vacated because § 922(q) is unconstitutional, both facially and as applied.[3]  He notes that in United States v. Lopez, 514 U.S. 549, 115 S. Ct. 1624 (1995), the Supreme Court struck down the Gun-Free School Zones Act of 1990, which was an earlier version of § 922(q), because it exceeded Congress's powers under the Commerce Clause. Although

---

[3]We generally review the constitutionality of a statute de novo. United States v. Wright, 607 F.3d 708, 715 (11th Cir. 2010).  However, where a defendant raises a constitutional challenge for the first time on appeal, we review only for plain error. Id.

12

Congress amended § 922(q) to comply with Lopez, Thomas argues that the amended version is still unconstitutional because it did not cure the Commerce Clause problems identified in Lopez and United States v. Morrison, 529 U.S. 598, 120 S. Ct. 1740 (2000).  We review Lopez, Morrison, and then the amended version of § 922(q).

## A.    Lopez and Morrison

In 1995, the Supreme Court held that a prior version of § 922(q), also known as the Gun-Free School Zones Act of 1990, was unconstitutional because it exceeded Congress's authority under the Commerce Clause.  Lopez, 514 U.S. at 551, 561-63, 115 S. Ct. at 1626, 1630-32; see Pub. L. No. 101-647, 101 Stat. 4789, 4844 (1990).  The version of § 922(q) at issue in Lopez made it a federal offense "knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone."  Lopez, 514 U.S. at 551, 115 S. Ct. at 1626.

The Supreme Court held that this version of § 922(q) violated the Commerce Clause because it did not limit the offense to situations substantially affecting interstate commerce.  Id. at 561, 115 S. Ct. at 1630-31.  In particular, the Lopez Court pointed out that § 922(q) "contain[ed] no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affect[ed] interstate commerce."  Id. at 561, 115 S. Ct. at 1631.  The Court also

13

observed that neither § 922(q) nor its legislative history contained express congressional findings regarding the effects upon interstate commerce of gun possession in a school zone.  Id. at 562-63, 115 S. Ct. at 1631-32.

Subsequently in 2000, the Supreme Court struck down certain provisions of the Violence Against Women Act as unconstitutional for exceeding Congress's authority under the Commerce Clause.  Morrison, 529 U.S. at 605, 613, 617, 120 S. Ct. at 1747, 1751-52, 1754.  While Morrison involved a wholly different statute, Thomas cites Morrison for its dicta discussing the Lopez decision, its reasoning, and its labeling of the "link between gun possession and a substantial effect on interstate commerce" as attenuated.  Id. at 609-14, 120 S. Ct. at 1749-52.

## B.    Post-Lopez Amendment to 18 U.S.C. § 922(q)

Responding to Lopez, Congress amended § 922(q) to include an express interstate commerce requirement.  See Pub. L. No. 104-208, § 657, 110 Stat. 3009-369 to 370 (1996) (amending the Gun-Free School Zones Act of 1990).  Section 922(q) now requires that the offender "knowingly [] possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows, or has reasonable cause to believe, is a school zone."  18 U.S.C. § 922(q)(2)(A) (emphasis added).  Congress also amended § 922(q) to include extensive congressional findings regarding the effects upon interstate commerce of gun possession in a school zone.  See 18 U.S.C. § 922(q)(1)(A)-(I).

14

## C.    Thomas's Constitutional Claims

As an initial matter, because Thomas failed to raise his constitutional challenge to § 922(q) below, we review it for plain error.  See United States v. Wright, 607 F.3d 708, 715 (11th Cir. 2010).

Although Thomas argues that the amended § 922(q) is facially unconstitutional based on Lopez, Congress amended § 922(q) to include an explicit "affecting interstate commerce" element to cure the deficiencies identified in Lopez.  See 18 U.S.C. § 922(q)(2)(A) (providing that the offender must possess "a firearm that has moved in or that otherwise affects interstate or foreign commerce").  The amended § 922(q) also includes extensive congressional findings regarding the effects upon interstate commerce of gun possession in a school zone post-Lopez, such as that firearms move easily in interstate commerce and that they move in interstate commerce during their manufacturing process. See 18 U.S.C. §§ 922(q)(1)(C), (D).

Thomas's reliance on Morrison fares no better.  Although the Supreme Court in Morrison referenced an attenuated link between interstate commerce and firearm possession in the pre-Lopez version of § 922(q), it did not address at all the amended version of § 922(q), much less hold it is unconstitutional.  See Morrison, 529 U.S. at 609-14, 120 S. Ct. at 1749-52.

15

The government stresses that Thomas has not shown that § 922(q) is unconstitutional. Our sister circuits under de novo review have rejected constitutional challenges to § 922(q) that were similar to Thomas's. See United States v. Nieves-Castano, 480 F.3d 597, 601 (1st Cir. 2007); United States v. Danks, 221 F.3d 1037, 1038-39 (8th Cir. 1999). At a minimum, Thomas has failed to demonstrate plain error as to the constitutionality of § 922(q) because neither the Supreme Court nor this Court has held that the amended § 922(q) is unconstitutional. See United States v. Castro, 455 F.3d 1249, 1253 (11th Cir. 2006).

As to Thomas's argument that § 922(q) is unconstitutional as applied to him, the amended § 922(q) now requires a nexus to interstate commerce where the firearm has moved in or otherwise affects interstate commerce. See 18 U.S.C. § 922(q)(2)(A). And the record here established that Thomas's firearm had moved in interstate commerce. The factual basis in Thomas's plea agreement stated that the firearm Thomas possessed traveled in or affected interstate commerce because it was manufactured in Arizona and he possessed it in Florida.[4] Therefore, Thomas has failed to show error, much less plain error, as to the constitutionality

---

[4]As an additional point, at Thomas's change-of-plea hearing, Thomas's counsel confirmed that the government would have been able to prove at trial that the firearm traveled in interstate commerce.

16

of § 922(q), and we affirm his Count 2 conviction under §§ 922(q)(2)(A) and 924(a)(4).

## III.  18 U.S.C. § 922(g)(1): FELON IN POSSESSION OF A FIREARM

In his supplemental briefing, Thomas argues that we must vacate his § 922(g) conviction in Count 1 in light of Rehaif.  In particular, Thomas contends that because the district court failed to advise him about the additional knowledge element announced in Rehaif (in Thomas's case, knowledge of his status as a convicted felon), his plea was not knowingly and voluntarily entered and must be set aside.

### A.    Plain Error Review

Because Thomas did not raise a Rehaif-type claim in the district court, we review his challenge to his guilty plea for plain error.  See United States v. Moriarty, 429 F.3d 1012, 1018-19 (11th Cir. 2005).  Plain error occurs when (1) there is error, (2) that is plain, and (3) that affected the defendant's substantial rights.  Id. at 1019.  "If all three conditions are met, we may exercise our discretion to recognize a forfeited error, but only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  Id. (quotation marks and alteration omitted).

17

**B.    Thomas's <u>Rehaif</u> Claim**

Federal Rule of Criminal Procedure 11 requires that the district court during the change-of-plea hearing, among other things, "inform the defendant of, and determine that the defendant understands, . . . the nature of each charge to which [he] is pleading." Fed. R. Crim. P. 11(b)(1)(G).

Here, as <u>Rehaif</u> makes plain, the district court erred when it failed to advise Thomas during the plea colloquy that knowledge of his status as a felon at the time of his offense was an element of his §§ 922(g) and 924(a)(2) offense that the government must prove. <u>See</u> <u>Rehaif</u>, 588 U.S. at ___, 139 S. Ct. at 2194-97. Thus, in this direct appeal context, Thomas has shown error that is plain. The question becomes whether Thomas can satisfy the third prong of plain error review.

To show that an error affected substantial rights in the guilty plea context, the defendant "must show a reasonable probability that, but for the error, he would not have entered his plea." <u>Moriarty</u>, 429 F.3d at 1020; <u>see also</u> <u>United States v. Dominguez Benitez</u>, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340 (2004). This Court has indicated that the defendant's burden with respect to the third prong of plain error review is a "daunting obstacle" that is difficult to satisfy, and that, if the record shows "that it is as likely that the error had no effect on [his] decision, he cannot prevail." <u>United States v. Davila</u>, 749 F.3d 982, 994 (11th Cir. 2014) (quotation marks omitted, alteration in original). Based on the record as a whole,

18

we conclude that Thomas has not met his burden to show that if the district court had properly advised him of Rehaif's knowledge element, then he would not have entered a guilty plea.

First, as part of his plea, Thomas admitted that when he possessed the firearm on January 20, 2017, he had already been convicted of the felony of attempted carjacking in 2011 and that his right to possess firearms and ammunition had not been restored.  Likewise, at sentencing, Thomas did not object to the facts in his PSI that he pled guilty to the attempted carjacking offense, that he was sentenced to more than one year in prison (the initial 364-day prison term and the additional 13-month prison term when his probation was revoked), and that his civil rights to carry a firearm were rescinded and never restored.[5]

In addition, the government stresses that the attempted carjacking offense to which Thomas pled guilty in Florida state court was a serious, second-degree felony punishable by up to 15 years in prison.  See Fla. Stat. §§ 812.133(2)(b) & 777.04(1), (4)(c) (designating attempted carjacking as a second-degree felony); Fla. Stat. § 775.082(3)(c)(2009) (providing a penalty of "imprisonment not

---

[5]Thomas points out that, although he was sentenced to an additional 13-month prison term on August 21, 2012, he was released from custody less than two months later on October 1, 2012.  Thomas's probation revocation was prompted by his arrest on May 14, 2012 for resisting an officer without violence, and it is not clear from the record how much of the 13-month sentence Thomas actually served before he was released.  Whether Thomas served an additional 13 months, 5 months, or 6 weeks after his probation was revoked, the fact remains that, at sentencing, Thomas did not dispute that he had served more than one year in prison for his attempted carjacking conviction.

19

exceeding 15 years" for a second-degree felony).  Further, the state court that accepted Thomas's guilty plea was required by Florida law to first ensure that Thomas understood that the statutory maximum penalty for his attempted carjacking offense was 15 years' imprisonment.  See Fla. R. Crim. P. 3.172(c)(1) (requiring the trial judge, before accepting a plea of guilty, to address the defendant personally and determine on the record whether the defendant understands, among other things, "the maximum possible penalty" provided by law); Ashley v. State, 614 So. 2d 486, 488 (Fla. 1993).  Thomas does not point to anything in the record to suggest that the state court judge who accepted his guilty plea failed to comply with state law.  See United States v. Burghardt, 939 F.3d 397, 404-06 (1st Cir. 2019) (concluding that the defendant failed to carry his burden on plain error review to show a reasonable probability that he would not have pled guilty had the district court advised him of Rehaif's knowledge element based in part on an analogous New Hampshire law requiring that the defendant be advised of his maximum sentence and the fact that the defendant did not present evidence indicating that the state court in his case did not conform to state law).        This record indicates, if anything, that Thomas was aware of his felon status when he possessed the 9-millimeter Ruger in 2017.  Notably, Thomas does not now claim, and never has claimed, that he did not know he was a convicted felon and that he would have proceeded to trial had he known that the government must prove this

20

knowledge element.  In this respect, the cases Thomas relies on stand in stark contrast and hurt, rather than help, him.  For example, in United States v. Brown, the defendant was reluctant to plead guilty.  Brown, 117 F.3d 471, 473 (11th Cir. 1997).  At the plea colloquy, both the defendant and his counsel explained to the district court that at the time of his offense, the defendant had not known that structuring currency transactions was illegal and that he was convinced to plead guilty only after his attorney showed him then-binding, but later overruled, caselaw from this Circuit holding that knowledge of illegality was not an element of the currency structuring offense.  Id.

Similarly, the plea colloquy in the Second Circuit's United States v. Balde indicated that the defendant in that case would not have pled guilty had the district court informed him, per Rehaif, that the government must prove he knew of his status as an illegal alien.  Balde, 943 F.3d 73, 95-98 (2d Cir. 2019).  The defendant in Balde "vigorously argued" in the district court that he was lawfully present in the United States, preserved that issue for appellate review in his plea agreement, and continued to maintain during his plea colloquy that he thought he had been paroled into the United States at the time of his firearm offense.[6]  Id. at 97; see also

---

[6]We reject Thomas's suggestion that either of these cases supports the proposition that a district court's plea colloquy omitting an element of an offense is per se reversible error.  Balde applied plain error review and determined, based "on the facts of this case," that the defendant had carried his burden to show that the error affected his substantial rights.  See Balde, 943 F.3d at 96-97.  Brown involved an appeal of the denial of a 28 U.S.C. § 2255 motion in which the

United States v. Ochoa-Gonzalez, 598 F.3d 1033, 1037-38 (8th Cir. 2010) (concluding that a defendant established plain error that affected her substantial rights where she maintained at her plea hearing that she did not know until after she was indicted that the number on her passport belonged to a real person, an essential element of her aggravated identity theft offense of which she was not advised).

In short, on plain error review, Thomas has the burden to show a reasonable probability that he would not have pled guilty but for the district court's Rehaif error, and, on this record, Thomas has not done so. Accordingly, we affirm Thomas's Count 1 conviction under §§ 922(g) and 924(a)(2).

## IV. CONCLUSION

For the reasons stated, we affirm Thomas's convictions and sentence.

**AFFIRMED.**

---

"undisputed facts" showed not only that the defendant was misinformed about an element of his offense, but that the "misinformation caused him to plead guilty." Brown, 117 F.3d at 477.